## Wytheville.

## KATHERINE CALMES EVERETT, ET AL. V. THE FIRST NATIONAL BANK OF ALEXANDRIA, ET AL.

### June 11, 1925.

Argued before Judge Chichester took his seat.

1. WILLS—*Construction—Intention of Testator.*—The intention of the testator is the polar star which is to guide in the interpretation of all wills.

2. WILLS—*Legacies and Devises—Personalty the Primary Fund for the Payment of Legacies.*—As a general rule the personal estate is not only the primary, but the only fund for the payment of legacies. It is equally true that the real estate is not chargeable under the law with their payment, if the personal estate proves insufficient, unless the testator has charged the land with their payment. This he may do either in express terms or by implication, but the intention to do so must be clear and manifest.

3. WILLS—*Construction—Surrounding Circumstances—Payment of Legacies from the Realty.*—Where a will does not expressly charge testator's real estate with the payment of legacies, the intention to charge the same by implication must be clear and manifest. But in ascertaining this intention, the court is not restricted to the language as visualized in cold print, but is permitted to call to its aid extrinsic evidence as to the facts and circumstances surrounding the testator at the time of the execution of the will.

4. WILLS—*Construction—Parol Evidence—Surrounding Circumstances.*—It is an old and well settled rule in the construction of wills that, although the meaning of the testator must be determined by the language he uses, parol evidence of his surrounding circumstances is always admissible in order to apprise the court as nearly as may be of his situation and viewpoint with reference to the persons and things dealt with in the will, and thus aid in determining his true intent.

5. WILLS—*Legacies and Devises—Payment of Legacies from Real Property—Legacies Exceeding Testator's Personal Property—Case at Bar.*—In the instant case legacies given by the testator aggregated about $23,000. From the evidence it appeared that at the time of the making of the will the testator did not own personal property approaching this sum, nor did he at any time thereafter. In fact, it

appeared that not so much as $1,000.00 was held by him in personalty. Testator was a large borrower from banks, and at his death was indebted in the sum of $15,000.00. Among the beneficiaries of the legacies were testator's wife and other near relatives. The wife had relinquished her dower interest.

*Held:* That the legacies were a charge upon testator's real property.

6. WILLS—*Construction—Residuary Clause.*—A will, after providing for the payment of testator's debts, gave a number of specific legacies to his wife and near relatives, and further provided that at the death of the wife his estate should be divided between his nieces, share and share alike.

*Held:* That the testator intended that at the death of his wife the residue of his estate, real and personal, after the payment of his debts and legacies, should be divided between his nieces.

7. WILLS—*Construction—Legacies to Wife—Wife and Testator on Joint Note—Case at Bar.*—In the instant case, a suit for the construction of a will, the action of the lower court in overruling the exceptions of defendants to the special master's report, relating to the liability of testator's wife upon the joint note of the testator and his wife, was assigned as error. The testator, by his will, left his wife a large legacy. The special master found that the wife was not liable for one half of the joint note. An official of the bank that held the note testified that it was the practice of the bank to take a joint note from man and wife; and that the proceeds of the note were credited to the account of the testator.

*Held:* That the action of the lower court in overruling defendants' exceptions was not erroneous.

8. WILLS—*Election of Widow—Widow a Purchaser—Real Property Subject to Payment of Legacy—Case at Bar.*—By operation of law, when a widow elects to accept the provisions of the will she thereby becomes, *ipso facto,* a purchaser for value, and is entitled to priority over the other named legatees who are denominated by the law writers as "volunteers," or "pure beneficiaries," or "mere objects of the testator's bounty." And in the instant case, where the personalty was not sufficient to pay the debts and the legacies, the widow as a purchaser of her legacy by reason of her relinquishment of dower was entitled to subject testator's realty to the payment of her legacy, even if there was a doubt, under the construction of the will, as to whether testator's realty was subject to the payment of legacies.

Appeal from a decree of the Corporation Court of the city of Alexandria in a suit for the construction of a will.

*Affirmed.*

The opinion states the case.

*Caton & Caton, Lloyd T. Everett, T. E. Didlake,* and
*John R. Saunders,* for the appellants.

*Gardner L. Boothe,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Corporation
Court of the city of Alexandria, construing the will of
Albert Doyle Brockett, deceased. The will was as
follows:

"ALEXANDRIA, VIRGINIA,
"September Second, Nineteen Twenty.

"I, Albert Doyle Brockett, of the city of Alexandria,
Virginia, of sound and disposing mind, revoking all
others, do make this my last will.

"I request all my debts of every kind to be paid.

"This having been done, I leave to my sister, Kate S.
Black, five hundred ($500.00) dollars.

"To my sister, Burnetta B. Lehmann, I leave an
income from an insurance policy of the Penn Mutual,
payable yearly, over a period of ten years.

"To my brother, Edgar S. Brockett, I leave the farm
in Prince William county, known as Twin Oaks, where
he now lives, for life. At his death to go to his wife
and children.

"I also leave an insurance policy, which is payable
yearly over a period of ten years by the Penn Mutual,
to him during his life, and should he die before the last
payment, then to his wife and children. I also leave
my brother, Edgar S. Brockett, during his life, the in-
come from a warehouse now occupied by Swift & Com-

pany.   Should all of his children be of age at his death, the income from said warehouse to go to my wife, Hattie N. Brockett, for life.

"My brother, Robert Brockett, has in bank at Greensboro, N. C., a note for fifteen hundred dollars, endorsed by me.   This note I want paid and given to him.

"To my nephew, Edgar B. Heimer, I leave five hundred ($500.00) dollars.   To my nephew, Fred A. Heimer, I leave one thousand ($1,000.00) dollars.

"I leave to Nannie L. Fairfax, one thousand ($1,000.00) dollars.

"I leave to my wife, Hattie N. Brockett, twenty thousand ($20,000.00) dollars and all furniture of whatsoever kind, also automobile and everything else outside of real estate, to do with as she pleases.   The income from the balance of my estate to go to my wife during her life.

"At her death, my estate to be divided between my nieces, share and share alike.

"I leave my wife, Hattie N. Brockett, executrix, without bond and no appraisement of the estate to be made.

"Albert Doyle Brockett."

Hattie N. Brockett, wife of the testator and named as executrix in the will, declining to qualify as such executrix, the appellee, First National Bank of Alexandria (hereinafter called the administrator), was appointed administrator of the estate with the will annexed.

On August 17, 1923, the administrator filed its bill in chancery, seeking a construction of the will of its decedent, and alleging, among other things, the following:   That the complainant was unable out of the personal estate to pay a legacy of $20,000.00 to Hattie

N. Brockett, the widow of the testator; that it had paid
all uncontested debts, except an unsecured debt of
$10,000.00 to the First National Bank of Alexandria
and a secured debt to Elizabeth Deakins for $4,500.00;
that the personal estate has been exhausted, save a
sufficient amount reserved for the payment of taxes,
insurance and repairs; that it is apparent from the
above that a considerable portion of the real estate of
the testator must be sold in order to carry out the
terms and provisions of his said will.

The prayer of the bill of complaint is as follows:

"In tender consideration whereof, and for as much as
your orator is remediless in the premises, save by the
aid of a court of equity where matters of this kind are
alone and properly cognizable, it prays that the said
Hattie N. Brockett, Helen Brockett Owen-Smith, Lucy
Seymour Black, Katharine Calmes Everett, Burnetta
Black, Georgia C. S. Brockett, an infant, over the age
of fourteen years, Virginia Brockett and Burnetta
Brockett, infants under the age of fourteen years, and
Mary M. Cassin, executrix of J. R. H. Deakins, trustee,
deceased, may be made defendants to this bill and re-
quired to answer the same, an answer under oath as to
the adult defendants being hereby expressly waived;
that a guardian *ad litem* may be appointed to represent
the infant defendants, who shall answer this bill of
complaint; that the infant defendant over the age of
fourteen years shall also answer the bill of complaint
under oath, as required by law; that all proper in-
quiries may be directed; that all liens, if any, on said
property may be ascertained; that a decree may be
rendered appointing a commissioner to sell all or such
parts of said real estate as it may be necessary to sell in
order to carry out the terms and provisions of the will
of the said testator, and to pay all debts and legacies;

\* \* \* that a reasonable fee may be allowed to counsel for complainant for conducting these proceedings, and that such other, further and general relief may be awarded to your orator as the premises may require and to equity may seem meet."

The defendants named, with the exception of Hattie N. Brockett and Mary M. Cassin, executrix, are the nieces of the testator.

Upon the calling of the cause for submission, the defendants (nieces of the testator) filed their separate demurrers, the grounds relied on in each being as follows:

"1. That the general or pecuniary legacies provided for in the will of the said Albert D. Brockett, deceased, are payable only out of the personal estate of the said Albert D. Brockett, deceased, and that to the extent that such personal estate may have been exhausted by the payment of the debts of the said Albert D. Brockett, deceased, the said legacies must fail.

"2. That the said Albert D. Brockett, deceased, by his said will, made a complete disposition of all of the real estate owned by him at the time of his death; that, therefore, no part of the said real estate so devised by the said testator, Albert D. Brockett, deceased, is subject to sale for the purpose of paying the general or pecuniary legacies provided for in the said will, and that, consequently, the said legacies must fail.

"3. That the general or pecuniary legacies provided for in the will of Albert D. Brockett, deceased, are payable only out of the personal estate of the said Albert D. Brockett, deceased, after the payment of the debts of the said testator, and that the real estate of the said testator cannot be subjected either in whole or in part to the payment of general or pecuniary legacies, and the said legacies must abate to the extent such personal

estate is insufficient to pay the same after the payment of debts chargeable against the estate of the said testator.

"4. And that the said bill of complaint is insufficient in law because the complainant is not entitled to the equity relief prayed for except in so far as it may be necessary to sell the real estate of the testator for the payment of debts."

Upon the filing of the demurrers, the complainant administrator secured leave of the court to amend its original bill by adding thereto the following clauses:

"Eighth: That your orator is informed, believes and therefore charges that neither at the time the testator wrote his will, on, to-wit, September 2, 1920, nor at any time thereafter, did he own sufficient personal property to pay the legacies bequeathed by him in said will, and that during the period between the writing of said will and his death, and for a long time prior to the writing of said will, the said testator was a borrower of considerable sums of money, large sums being due by him at the time of his death.

"Ninth: That at his death the only personal property the testator possessed besides his clothing and personal effects was his household and kitchen furniture, his office furniture, a Ford automobile, ten shares of stock in the American Real Estate and Mortgage Corporation of the par value of one thousand dollars (and subsequently redeemed for approximately one thousand dollars) and a few dollars in bank. He had $18,900.00 life insurance payable to his estate, with debts exceeding this amount.

"Tenth: That none of the legacies bequeathed in his said will have been paid by your orator, whose first duty was, of course, to pay the debts of the decedent."

Thereupon the defendants again filed their demur-

rers, and after argument the cause was submitted for decision upon the bill and demurrers.

The court overruled the demurrers, answers were filed, a reference to a commissioner was had, and upon the filing of his report, the court entered the decree complained of.

The assignments of error are eight in number. With the exception of number three, hereinafter considered, all of the assignments relate to the action of the court in overruling the demurrers and in decreeing that the legacies mentioned in the will were a charge upon the real estate of the testator, and will be considered together.

As observed, the question for determination is whether the real estate is to be subjected to the payment of legacies, or must the legacies fail by reason of the lack of sufficient personal estate to discharge them.

[1] So often has this court laid down the rule that "the intention of the testator is the polar star which is to guide in the interpretation of all wills," it has become a canon of construction. Another rule of law as deeply imbedded in our jurisprudence is that the personal estate of a testator is the primary and only fund for the payment of legacies, unless the real estate is charged with their payment in express language or by clear implication.

[2] In *Armentrout* v. *Armentrout*, 111 Va. 348, 69 S. E. 333, the court quotes with approval the doctrine enunciated in *Todd* v. *McFall*, 96 Va. 754, 32 S. E. 472, wherein Judge Riely says: "It is universally conceded that as a general rule the personal estate is not only the primary, but the only fund for the payment of legacies. It is equally true that the real estate is not chargeable under the law with their payment, if the personal estate proves insufficient, unless the testator has charged the

land with their payment.   This he may do either in express terms or by implication, but the intention to do so must be clear and manifest.''

[3] As the will under consideration fails to expressly charge the real estate with the payment of the legacies, the intention to charge the same by implication must be clear and manifest.   In ascertaining this intent we are not restricted to the language as visualized in cold print, but are permitted to call to our aid extrinsic evidence as to the facts and circumstances surrounding the testator at the time of the execution of the will.

[4] In *Starke* v. *Berry*, 118 Va. 711, 88 S. E. 70, Judge Kelly said:   ''It is an old and well settled rule in the construction of wills that, although the meaning of the testator must be determined by the language he uses, parol evidence of his surrounding circumstances is always admissible in order to apprise the court as nearly as may be of his situation and viewpoint with reference to the persons and things dealt with in the will, and thus aid in determining his true intent.''

In 4 Wigmore on Evidence, page 3499, it is said: ''Once freed from the primitive formalism which views the document as a self-contained and self-operative formula, we can fully appreciate the modern principle that the words of a document are never anything but indices to extrinsic things, and that therefore all the circumstances must be considered which go to make clear the sense of the words—that is, their associations with things.   In the field of wills, where there is none but the individual standard of meaning to be considered, this principle is seen in unrestricted operation; and its full sanction has often been judicially avowed.''

[5] To the same effect are the holdings in *Randolph* v. *Wright*, 81 Va. 608; *Senger* v. *Senger*, 81 Va. 687; *McCabe* v. *Cary's Executor*, 135 Va. 428, 116 S. E. 485;

*Starke* v. *Berry*, 118 Va. 706, 88 S. E. 68; *Swan* v. *Swan's Ex'or*, 136 Va. 496, 117 S. E. 858.

That the rule is just and wise is exemplified in the instant case. The cause was referred to Albert V. Bryan, special commissioner, to ascertain among other things the following:

"First: Of what real estate the testator, Albert D. Brockett, died seized and possessed?

"Second: The liens thereon, if any, and their respective orders and priorities?

"Third: The unpaid debts of the said testator, with their orders and priorities, if any?

"Fourth: The unpaid legacies bequeathed by the will of the said Albert D. Brockett?

"Fifth: The annual rental value of the real estate of the said Albert D. Brockett, and the fee simple value thereof.

"Sixth: Whether Albert D. Brockett, the testator, either at the time he wrote his will or at any time between that date and the date of his death owned sufficient personal property to pay the legacies bequeathed by his said will."

Pursuant to the decree of reference, the commissioner, after hearing evidence, made his report showing the status of the estate. The extrinsic evidence shows that the testator was a provision and grocery broker for many years in Alexandria, deriving a fair income from his business; that he was the owner of several parcels of real estate of the approximate value of $60,000.00; that the estate was indebted in the sum of $15,000.00; that the legacies bequeathed amounted to $23,000.00.

In answer to the sixth query in the decree, the commissioner says: "No account books were produced to show the wealth and earnings of Albert Doyle Brockett

at the time of the execution of his will or for some years before his death, but the testimony of Robert S. Jones, Esq., and Julian Y. Williams, Esq., with whom the testator discussed such personal matters, convince your commissioner that at no time during this period was the late Mr. Brockett the owner of personal property approaching anywhere near the sum of $23,000.00, the aggregate of the legacies. In fact, the statements of the witnesses would infer that not so much as $1,000.00 was held by him in personalty, exclusive of his immediate household furniture and Ford automobile.''

It seems clear to us, in view of all the facts and circumstances, that the testator, a layman, in writing his will intended that his wife, the one for whom he would naturally be most solicitous, should be the one to derive the greatest benefit from his estate. It is inconceivable that the testator was ignorant of the fact that his personal estate was insufficient to pay the legacies, for the uncontroverted evidence demonstrates that at no time from the date of the will to his decease did he have any appreciable part of the sum bequeathed. He was not only a borrower from the banks, but the record discloses that he had borrowed various sums of money on his life insurance policies. The evidence of his friends and neighbors does not disclose that the testator was one who would be guilty of perpetrating a gruesome joke upon his wife, his blood relatives, and a trusted employee of fourteen years.

To sustain the contention of the appellants would lead to this result. The sister of testator would be deprived of her legacy, his nephews would be deprived of legacies aggregating $1,500.00, Nannie L. Fairfax, a trusted employee, would be deprived of the sum of $1,000.00, while the wife of testator would lose the sum of $20,000.00 bequeathed to her, as well as the

automobile and furniture given her.   Not only this, but the wife having relinquished her dower interests in the estate, by her acceptance under the will, would be deprived at this time of any interest in the estate. There is not one word in the record that leads us to conclude that the testator designed this result.

[6] We are also of opinion that a proper construction of the clause: "At her death my estate is to be divided between my nieces, share and share alike," is that the testator at the death of his wife intended the residue of his estate, after the payment of debts and legacies, should be divided between his nieces, share and share alike.

This brings us to a consideration of the third assignment of error, which is as follows:

[7] "3. In overruling the exceptions of the defendants to the special master's report, relating to the liability of Hattie N. Brockett, upon the joint note of the testator and the said Hattie N. Brockett, for $10,000.00 and interest thereon, held by the First National Bank of Alexandria, Virginia."

There is no merit in this assignment.

In regard to the execution of this note, Mr. George E. Warfield, an official of the First National Bank, the holder of the note, testified that it was the almost invariable practice to have a joint note from man and wife; that the proceeds of the note were credited to the account of A. D. Brockett.   If there was any doubt of the right of Mrs. Brockett to be paid the legacy bequeathed her under the construction of the will, *supra*, still she would be entitled to receive the property named, as a purchaser of the legacy, by reason of the relinquishment of her dower.

[8] In determining the status of a widow who relinquishes her dower rights and decides to take under the

will, this court, in *Davis* v. *Davis*, 138 Va. 682, 123 S. E. 538, said:

"By operation of law, when she elects to accept the provisions of the will, she thereby becomes, *ipso facto*, a purchaser for value, and is entitled to priority over the other named legatees who are denominated by the law writers as 'volunteers,' or 'pure beneficiaries,' or 'mere objects of the testator's bounty.'

"The widow is a purchaser for value in accepting the provisions of the will, and is not treated as a gratuitous object of the testator's bounty. By relinquishment of her dower the estate acquires a valuable right of property.

"Whether the provisions be more or less, so far as the testator, the widow and all pure beneficiaries under the will are concerned, it is the right of the testator to affix what consideration he pleases for the relinquishment of dower, and for the widow to accept or reject it.

"In a note to the case of *Allen* v. *Tressenrider*, 2 Ann. Cas. 974, at page 976, it is said: 'Nothing is better settled than that the wife is a purchaser of a legacy which she claims under a will in lieu of her dower. At the death of the testator she has the legal right to her dower. It overtops all legacies, specific as well as general. It is a right superior even to the claims of creditors, and when she accepts the offer of exchange tendered her in the will, and gives up her dower, she pays a valuable consideration for the portion which she accepts.'

"Again, on page 977, we read: 'When a widow accepts a legacy left her in lieu of her dower in the lands and all her rights as widow in the estate of her husband, she becomes in equity a creditor of the testator's estate to the extent of such legacy, and devisees and specific

6

legatees are alike liable to contribute to the payment of her claims."

From what has been said it follows that the court is of the opinion that there is no error in the decree complained of, and that it should be affirmed.

*Affirmed.*