# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## OCTAVIA GRAHAM MARCY v. HENRY SYLVESTER GRAHAM, ET ALS.

### June 11, 1925.

Argued before Judge Chichester took his seat.

1. EQUITY—*Conversion and Reconversion—Statement of Doctrine.*—The doctrine of equitable conversion is a pure creature of equity, unknown to the law, and is a mere incident or application of the maxim that equity treats that as done which ought to be done. Under it land which is directed to be converted into money is treated as money, and money which is directed to be invested in land is treated as land.

2. EQUITY—*Conversion and Reconversion—Doctrine as Applied to Wills.*—As applied to wills, the object is to ascertain the intention of the testator, and whether that intention was a conversion out and out for all purposes, or merely for a particular purpose, is to be gathered from a consideration of the will as a whole. That a direction to convert will be treated as a conversion is a well-recognized rule of equity jurisprudence.

3. EQUITY—*Conversion and Reconversion—Inequitable Results—Wills—Intention of Testator.*—Because conversion is an equitable doctrine (though its application and its limitations are quite well defined, and do not depend upon the length of the chancellor's foot), it should never be applied to defeat the purpose of a testator or to produce inequitable results.

4. CONVERSION AND RECONVERSION—*Wills—Case at Bar.*—Direction by a testator in his will to dispose of his real estate and to divide the proceeds arising therefrom equally among his children operated to convert that property from realty to personalty.

5. EQUITY—*Conversion and Reconversion—Reconversion—Partition in Kind—Case at Bar.*—Where a testator directed that his real property should be disposed of and the proceeds divided equally among his children, a deed of partition under which the beneficiaries took certain parcels of the land in severalty operated to reconvert the land so taken from personalty to realty.

6. EQUITY—*Conversion and Reconversion—Election to Reconvert.*—An election to reconvert property by the parties interested must be the unequivocal act of all of them.

7. EQUITY—*Conversion and Reconversion—Reconversion—Holding for Sale—Presumption that Status is Unchanged.*—Devisees of a tract of land, converted by their father's will into personalty, reconverted a portion of the land by a partition in kind, but took no action with reference to an undivided *residuum* of the tract which could with certainty be construed as an unequivocal determination of all of them to reconvert the personalty into realty. A fair construction of their joint actions was that they were holding it for purposes of sale, and so holding it in accordance with the will of their father; this because such a status, being once established, is presumed to continue until changed by the parties.

Held: That the *residuum* of the tract was not reconverted.

8. EQUITY—*Conversion and Reconversion—Statement of the Doctrine of Reconversion.*—The party entitled to the beneficial interest may elect to prevent the actual conversion, and to hold it in the form in which he found it; and this election he may make by application to the court of equity, or by unequivocal acts or declarations plainly manifesting his determination.

9. EQUITY—*Conversion and Reconversion—Election to Reconvert.*—The acts and declarations which are construed to constitute an election to reconvert converted property must clearly manifest the determination to make such an election.

10. EQUITY—*Conversion and Reconversion—Election to Reconvert—Case at Bar.*—In the instant case no act of the beneficiaries indicating an intent to reconvert real estate, converted into personalty by their father's will, appeared other than their bare failure to dispose of the property as directed by the will. It would have been difficult and expensive to divide the property in kind, and the fact that they allotted part of the property and failed to allot the rest meant that they did not intend to change any of their legal rights with reference to that portion of the property which they left undivided.

Held: That there had been no reconversion.

11. EQUITY—*Conversion and Reconversion—Election to Reconvert—Holding Property and Collecting Rents.*—The mere holding of property directed to be converted into personalty and the collection of rents and profits therefrom does not constitute an election to reconvert.

12. WILLS—*Legacies and Devises—Personalty Primary Fund for Payment of Legacies—Liability of Realty.*—Real estate is not chargeable with the payment of legacies even where the personal estate proves insufficient unless the testator has charged the land with their payment and the intention so to charge must be clear.

13. WILLS—*Legacies and Devises—When Legacies Charged on Land.*—Where the language of a will combines real and personal estate in a residuary clause, a charge upon the real estate which is included in such residuum arises by implication for the satisfaction of the legacies previously given in the will, if such implication is not inconsistent.

with admissible extraneous circumstances or other provisions of the
will itself.

14.  WILLS—*Legacies and Devises—When Legacies Charged on Real Estate.*—
A charge of legacies on the realty will be implied if the language of
the will indicates that the testator intended the legacies to be paid,
knowing that his personal estate would be insufficient for the pur-
pose, or if it appear that in giving the legacies he had the real estate
in mind.

15.  WILLS—*Construction—Intention of Testator.*—In the construction of wills
the intention of the testator, if it can be determined, is controlling,
and all refinements of the law as to the abatement or ademption of
legacies for the exoneration of realty specifically devised must yield
to the power of the testator to dispose of his property as he desires.
This intention, as has been so often said, is the guiding star, and when
this is ascertained, and can be made effective, the quest is ended,
and all other rules become immaterial.

16.  WILLS—*Legacies and Devises—Legacies a Charge on the Land—Case at
Bar.*—In the instant case testatrix's personal property was wholly
insufficient to satisfy her pecuniary legacies to her nearest relatives.
In framing the residuary clause to her will the testatrix intended to
combine all of her personal property which had not been thereto-
fore disposed of with all of her real estate which had not been other-
wise devised.  She then had in mind the unallotted and unsold
residue of the real estate, which her father had directed to be sold
and the proceeds divided.  And when she specifically referred to
property which would "come to her," she referred to and included
her interest in these specific assets of her estate, the undivided land
of her father's estate.

      *Held:*  That testatrix intended this realty to be chargeable with the
pecuniary legacies.

Appeal from a decree of the Circuit Court of Arling-
ton county.  Decree for complainants.  Defendant
appeals.

                                                            *Affirmed.*

The opinion states the case.

*Christopher B. Garnett* and *John S. Barbour*, for the
appellant.

*Basil D. Boteler* and *Mackall & Mackall,* for the appellees.

PRENTIS, P., delivered the opinion of the court.

This is a controversy between the legatees under the will of Eleanor Euphemia Graham, to whom she bequeathed specific pecuniary legacies, and Octavia Graham Marcy, who is one of three joint legatees and devisees under her will. The questions discussed require the construction of the wills of Eleanor Euphemia Graham and of her father, Curtis B. Graham, Sr., who died in 1890. His will, after making provision for the use of his home by his wife, directs:

"Such part or parts of my estate as may be to the best interest of the same to be disposed of to liquidate any indebtedness against same. The residue to remain intact so long as my wife may live.

"Any surplus arising from rents, and not otherwise provided for, after paying all taxes, insurance and necessary repairs shall be divided equally, share and share alike, to my children hereinafter named. At the death of my wife, my estate to be disposed of as my executors, hereinafter named, may deem to the best interest of the same and the proceeds therefrom divided equally, share and share alike, to my eight children, namely: Cecilia, Euphemia, Curtis, Henry, Andrew, Sadie, Ottie and Frederick, or their heirs.

"And I do name my two sons, Andrew and Frederick, as my executors to carry out the provisions of this my last will and testament, and I further request that they be not required to give bond."

The questions raised under this provision are whether or not, at the death of the wife of Curtis B. Graham, Sr., and because of the direction to dispose

of his real estate and divide the proceeds thereof be-- tween his eight children, there was an equitable con- version of the land into personalty, and also whether or not, conceding this to be true, the property was. thereafter by the action of the beneficiaries reconverted. into realty.

The land consisted of about thirty-nine acres in: Arlington county and five lots in the city of Wash-- ington, D. C. After the death of the wife of Curtis B. Graham, Sr., the land in Arlington county was sub- divided into nine parcels and each of his eight children, by deed of partition, took one lot, which left another designated as No. 9, containing 22.837 acres, which was neither partitioned nor disposed of, and this parcel is. the subject matter of this suit. In 1918 one of the lots in the city of Washington was sold and conveyed by the joint deed of these beneficiaries under the will of Curtis B. Graham, Sr., and the proceeds distributed. Another of these lots in Washington has been sold since the death of his daughter, Eleanor Euphemia Graham. Her share of the proceeds thereof is held by her execu- tor and has never been distributed. The other lots. there have not been disposed of, but are held by his. living children and the heirs, devisees and grantees of those who have since died, and some of these have conveyed their interests in these lots to others.

Eleanor Euphemia Graham, daughter of Curtis B. Graham, Sr., received, in the partition referred to, one of the lots in Arlington county, Virginia, upon which she built her residence, now known as "Montrose," which she has encumbered with a mortgage of $2,000.00. She died in 1918 owning this place, "Montrose," in severalty, as well as her undivided interest in the other undisposed of real estate which has been referred to. She had also by purchase increased her interest in the.

lots in Washington so as to make that interest one-sixth instead of one-eighth. She left a will, the con-struction of which is here involved, which is printed in the margin.*

This is a partition suit, brought by one of the chil-dren of Curtis B. Graham, Sr., for the partition of the undivided 22.837 acres referred to as lot No. 9, in Arlington county.

The appellant here, Octavia Graham Marcy, filed an answer which raises the issues to be determined. She denies that the pecuniary legacies bequeathed in the will of her sister, Eleanor Euphemia Graham, were liens or charges upon her sister's interest either in that land or upon her interest in the lots in Washington, or

---

*I, Eleanor Euphemia Graham, at 'Montrose,' my home in the county of Alexandria and State of Virginia, being of sound mind, memory, and under-standing, do make my last will and testament in manner and form following:

"First, I give, devise and bequeath to my brother, Curtis Burr Graham, two hundred dollars ($200.00).

"I give, devise and bequeath to my brother, Henry Sylvester Graham, two hundred dollars ($200.00).

"I give, devise and bequeath to my brother, Frederick Warden Montrose Graham, two hundred dollars ($200.00).

"I give, devise and bequeath to my nephew, Graham Ormand Wellman, one thousand dollars ($1,000.00).

"I give, devise and bequeath to my niece, Marion Euphemia Wellman, one thousand dollars ($1,000.00).

"I give, devise and bequeath to my niece, Mary Kanaday Graham Payne, one thousand dollars ($1,000.00).

"I bequeath my share of the piano to my sister, Octavia Graham Marcy.

"Our grandfather's portrait, Doctor Isaac Gilbert Graham, owned by me, I bequeath to my brother, Frederick Warden Montrose Graham, with the understanding that it will be handed down only to a descendant by the name of Graham, it is to remain hanging on the wall of my home, 'Montrose,' as long as the house 'Montrose' remains in the family.

"My brother's portrait, Colonel Curtis Burr Graham, I bequeath to my sister, Sarah Graham Wellman, the portrait to remain hanging upon the wall of my house, 'Montrose,' as long as the house 'Montrose' remains in the family.

"I bequeath my portrait to Marion Euphemia Wellman, it is to remain hanging upon the wall of my home, 'Montrose,' as long as the house 'Mont-rose' remains in the family.

"I bequeath to my sister, Octavia Graham Marcy, the plaster bust of my father, Colonel Curtis Burr Graham, which is to remain in my home, 'Montrose,' as long as the house remains in the family.

"I bequeath my home, 'Montrose,' in Alexandria county, in the State of Virginia, to my three sisters, Cecilia Augustine Graham, Sarah Graham

that they were charges upon any moneys in the hands of her executor arising from rents collected or from the sale of the Washington property, and alleges that these pecuniary legacies are not charges upon any of the real estate passing under her sister's will; that as they are not and as the available personal property is insufficient even to pay her debts, these legacies must fail.

The cause was referred to a commissioner to take the usual accounts. Among other things he reported that the pecuniary legacies provided for in her will were charges against her estate; that she did not leave personal estate sufficient to pay her debts and the legacies; and that both debts and legacies constituted a charge upon her interest in the undivided lot in Arlington county as well as upon her interest in the real estate

Wellman, Octavia Graham Marcy, as long as they shall live; after their death, the home, 'Montrose,' will go to my two nieces, Marion Euphemia Wellman and Mary Kenaday Graham Payne.

"Second. I bequeath my jewelry, silver and all my personal property to my niece, Marion Euphemia Wellman, if she remains single, if marries, shall will divide with my niece, Mary Kenaday Graham Payne.

"I give one hundred dollars ($100.00) to be spent on the vault owned by Graham family, situated in the Congressional Cemetery in the city of Washington, D. C.

"After all debts are paid, I leave and bequeath all property I own or all which will come to me to my three sisters, share and share alike, to hold during their life, Cecilia Augustine Graham, Sarah Graham Wellman, Octavia Graham Marcy.

"Notice:—After the death of my three sisters, Cecilia A. Graham, Sarah G. Wellman and Octavia G. Marcy, all my property I left them will go to my two nieces, Marion Euphemia Wellman and Mary Kenaday Graham Payne.

"Fourth. I hereby appoint Henry Sylvester Graham, Frederick Worden Montrose Graham, executors of this my last will and testament.

"In witness whereof I, Eleanor Euphemia Graham, the testator, have to this my last will and testament set my hand and my seal this seventh day of September, A. D., 1914.

"Eleanor Euphemia Graham, (Seal).

"Signed, sealed, published and declared by the above named Eleanor Euphemia Graham as and for her last will and testament in the presence of us, who have hereunto subscribed our names at her request as witnesses thereto, in presence of the said testator and of each other.

"Witnesses:
"E. W. Hoskins.
"Mabel W. Hoskins."

in Washington, and upon the proceeds arising from the ·sale and rents thereof.

This appellant filed her exceptions, claiming that the finding of the commissioner was erroneous and that it should have been found that the debts were primarily payable out of personal property to the disappointment ·of these legatees, and that the commissioner should have found instead that the legacies were not a charge upon the real estate and should abate for the payment of the debts of the decedent.

The court overruled these exceptions, confirmed the report of the commissioner and directed a sale of the land in Arlington county for the payment of the debts .and pecuniary legacies, which were held to be liens thereon as well as upon Eleanor Euphemia Graham's interest in the fund representing her distributive share thereof; and from that decree this appeal has been .allowed.

The assignments of error present the same issues which the exceptions to the commissioner's report presented.

[1, 2] 1. The doctrine as to equitable conversion has been recently stated succinctly by this court in *Moore* v. *Kernachan*, 133 Va. at page 211, 112 S. E. 633, in this language: "The doctrine of equitable conversion is a pure creature of equity, unknown to the law, and is a mere incident or application of the maxim that equity treats that as done which ought to be done. Under it land which is directed to be converted into money is treated as money, and money which is directed to be invested in land is treated as land. As applied to wills, the object is to ascertain the intention of the testator, and whether that intention was a conversion out and out for all purposes, or merely for a particular purpose, is to be gathered from a consideration of the

will as a whole.   That a direction to convert will be treated as a conversion, is such a well recognized rule of equity jurisprudence everywhere that it would be a waste of time and space to discuss it or to cite the authorities generally in support of it."

[3, 4] Because it is an equitable doctrine (though its application and its limitations are quite well defined and do not depend upon the length of the chancellor's foot), it should never be applied to defeat the purpose of a testator or to produce inequitable results.   Bearing the general rules in mind, it seems to be true that the direction in the will of Graham, Sr., to dispose of the estate and to divide the proceeds arising therefrom equally, operated to convert that property from realty to personalty.   *Tazewell* v. *Smith's Adm'r*, 1 Rand. 313, 10 Am. Dec. 533; *Effinger* v. *Hall*, 81 Va. 94; *Carr* v. *Branch*, 85 Va. 597, 8 S. E. 476; *Harcum's Adm'r* v. *Hudnall*, 14 Gratt. (55 Va.) 369.

[5, 6] It is, however, also claimed for the appellant that the acts of the parties thereafter reconverted the property into real estate, because the beneficiaries have elected to deal with and retain the property in its original form.   That the deed of partition, to the extent that these beneficiaries took certain parcels of the land in severalty so operated, there can be no reason to doubt, but as has been recited the land here involved, 22.837 acres, being more than half of the original tract, has never been either allotted or disposed of.   The cases cited show that such an election to reconvert the property by the parties interested must be the unequivocal act of all of them.   *Effinger* v. *Hall*, 81 Va. 107.

[7] As to the land involved in this suit, it appears to be still subject to the provisions of the will of Graham, Sr.   These beneficiaries did not, before the death of

Eleanor Euphemia Graham, take any other action with reference to this undivided residuum of the tract which can with certainty be construed as an unequivocal determination of all of them to reconvert the property into realty. Indeed, a fair construction of their joint actions is that they were holding it for purposes of sale, and so holding it in accordance with the will of their father. This because such a status being once established is presumed to continue until changed by the parties.

[8] In *Harcum's Adm'r* v. *Hudnall,* 14 Gratt. (55 Va.) 374, this is said: "Though the subject thus directed to be converted is thus stamped with the character of the property into which it is to be converted, the party entitled to the beneficial interest may elect to prevent the actual conversion, and to hold it in the form in which he found it; and this election he may make by application to the court of equity or by unequivocal acts or declarations plainly manifesting his determination. *Cruse* v. *Barley,* 3 P. Wms. 22, n. 1; *Edwards et ux* v. *Countess of Warwick,* 2 P. Wms. 171, 175, n.; *Craig* v. *Leslie,* 3 Wheat. 563; 2 Story's Eq. Jur., section 793. If, however, he die without having made an election, the property will pass to his heirs or personal representatives, just as it would have passed if the purpose of the will or other instrument under which he claimed had been fully carried into effect and the conversion actually made before his death.    * * *"

[9] This, which is peculiarly applicable to the facts here, is also there said: "In this case I think nothing appears sufficiently manifesting an intent to elect by any of the parties interested. The only thing that looks at all like such election was the failure of the parties to cause a sale to be made at an earlier period and the retention of the property so long in the form

of realty." It is always conceded that the acts and declarations which are construed to constitute an election must clearly manifest the determination to make such an election.

[10, 11] We find in this record no other act, unequivocal or otherwise, with respect to the undisposed of residuum of the property given in the father's will, which indicates the intention to reconvert it into real estate. There is the bare failure to act. It would have been difficult and expensive to divide it in kind, and the fact that they allotted part of it and failed to allot the rest should doubtless be construed to mean that they did not intend to change any of their legal rights with reference to that portion of it which they left undivided. It is clearly held in *Harcum's Adm'r* v. *Hudnall, supra,* that the mere holding of the property and the collection of the rents and profits therefrom does not constitute an election to reconvert.

The cases involving this question are not all in accord, but we believe the better reason supports the conclusion indicated, and that, under the facts of this case, the undivided land in Arlington county should be construed to stand just as it was left by the will of Graham, Sr., and that Eleanor Euphemia Graham's share of the proceeds of the sale thereof should be treated as personalty, and so pass under her will.

[12] 2. Even, however, if, because of the delay and the other actions of the parties in interest, it might be held that there was a reconversion of this property into real estate prior to the death of Eleanor Euphemia Graham, we hold, nevertheless, that as a part of the estate which passes under the residuary clause of her will, it is, after the payment of her debts, subject to and chargeable also with all of the pecuniary legacies bequeathed in that will.

The principle which supports this conclusion is thus stated by Riely, J., in *Todd* v. *McFall*, 96 Va. 757, 32 S. E. 472: "It is universally conceded that as a general rule the personal estate is not only the primary, but the only fund for the payment of legacies. It is. equally a general rule that the real estate is not chargeable under the law with their payment, if the personal estate proves insufficient, unless the testator has charged the land with their payment. This he may do either in express terms or by implication, but his intention to do so must be clear and manifest. And so in every case, whether the real estate is charged with the payment of legacies is a question of intention. The intention to charge must be either expressly declared, or be clearly deducible from the language and dispositions of the will."

[13] There is another rule of construction which is well settled in this State, and that is that where the language of a will combines real and personal estate in a residuary clause, a charge upon the real estate which is included in such residuum arises by implication for the satisfaction of the legacies previously given in the will, if such implication is not inconsistent with admissible extraneous circumstances or other provisions of the will itself. So it has been held in *Downman* v. *Rust*, 6 Rand. (27 Va.) 587, where the language was, "all the rest of my estate, real and personal;" in *Crouch* v. *Davis*, 23 Gratt. (64 Va.) 62, where the language was, "whatever balance I may be worth I want given to my sister Ann Crouch and her children;" in *Wood* v. *Sampson*, 25 Gratt. (66 Va.) 847, where the language is, "all the remaining estate, property and credits, whether real or personal, which I may own at my death;" and in *Lewis* v. *Darling*, 16 How. 1, 14 L. Ed. 819, the language is, "all the rest and remainder

of my property, debts, rights and actions of what kind and nature soever." In *Armentrout* v. *Armentrout*, 111 Va. 348, 69 S. E. 333, the language used was held not to charge the real estate with the legacies.

This then leads us to the will of Eleanor Euphem a Graham in order to ascertain whether she, by implication, charged these legacies upon the property here involved, the undivided tract of land in Arlington county. Placing ourselves in her chair and looking through her spectacles, we find that she bequeathed all of her tangible personal property, and that her accumulated funds and credits available for the payment of these legacies were insignificant in amount and manifestly insufficient. She only had about $250.00 in the hands of her agent who was the executor of her father, and less than $10.00 in bank. Turning to the will, we find that these legacies appear to be first in her thoughts, and that they are given to her brothers, nieces and nephew, her nearest of kin; that the other personal property bequeathed specifically consists of family portraits and a plaster bust of her father, her share in the piano, and her personal belongings, designated as "jewelry, silver and all my personal property." This is followed by the direction of the expenditure of $100.00 on the family vault in the Congressional cemetery. In passing we observe, that when the whole will is considered, it seems quite apparent that the words "all my personal property," used as they are in connection with the bequest of her jewelry and silver, mean only to include her intimate personal effects not otherwise bequeathed.

In addition to the tangible personal property just referred to, greatly prized by her no doubt, but of small pecuniary value, she specifically devises her home "Montrose" to her three sisters for life (of whom the

appellant is one), and after their death to her three nieces—who are named. Then comes this clause, which in this will may fairly be construed to be a residuary clause, which disposes of the rest of her estate, real and personal, reading: "After all debts are paid, I leave and bequeath all property I own or all which will come to me to my three sisters, share and share alike, to hold during their life, Cecilia Augustine Graham, Sarah Graham Wellman, Octavia Graham Marcy. Notice: After the death of my three sisters, Cecilia A. Graham, Sarah G. Wellman and Octavia G. Marcy, all my property I left them will go to my two nieces, Marion Euphemia Wellman and Mary Kenaday Graham Payne." That is, she gives this residuum to the same sisters and nieces to whom she had specifically devised "Montrose."

Why divide this benefaction into two gifts and employ separate clauses to give the property to the same persons if her thought about the property was identical? The answer seems to be obvious and we can find no rational explanation of this repetition except that she then had in mind this very undivided and undisposed of property in Arlington county and in Washington, this property a share of which her father had given her but which she had never received in money as her share of the proceeds thereof as indicated by her father's will. This then was the property which she described as "property I now own or all which will come to me." It was, as we conclude, even if this undivided property should be held to be reconverted into real estate, a combining in the residuary clause of all of the residue of her estate, real and personal. When this is the case, the implication arises that the residuary legatees and devisees are only to receive what is left after the debts and legacies have been fully paid.

[14] This quotation appears in *Smith* v. *Mason*, 89 Va. 715, 17 S. E. 4, from Am. & Eng. Ency. of Law: "The personalty is not only the primary but the only fund for the payment of legacies, unless they are charged upon the realty by express direction or by necessary implication. What language will amount to an express charge must always be a matter of construction and interpretation, depending upon the terms employed in each individual case. A charge will be implied if the language of the will indicates that the testator intended the legacies to be paid, knowing that his personal estate would be insufficient for the purpose, or if it appear that in giving the legacies he had the real estate in mind."

This is the rule properly applicable here. To hold otherwise would not only violate the many precedents which are easily accessible, but most certainly would defeat the scheme and purposes of this testatrix.

[15] 3. The underlying principle in all of these cases in the construction of the wills is always that the intention of the testator, if it can be determined, is controlling, and all refinements of the law as to the abatement or ademption of legacies for the exoneration of realty specifically devised must yield to the power of the testator to dispose of his property as he desires. This intention, as has been so often said, is the guiding star, and when this is ascertained and can be made effective, the quest is ended and all other rules become immaterial.

[16] We conclude, therefore, in response to this branch of the argument, that in framing this residuary clause of her will the testatrix intended to combine all of her personal property which had not been theretofore disposed of, with all of her real estate which had not been otherwise devised, and that she then had in mind the unallotted and unsold residue of the real

estate which her father had directed to be sold and the proceeds divided; and that when she specifically referred to property which would come to her, she referred to and included her interest in these specific assets of her estate, the undivided land in Arlington county and the unsold lots in Washington. As these are ample in value to satisfy both debts and legacies, it is unnecessary to consider any other possible question which might otherwise have arisen.

*Affirmed.*