# Richmond

ELSIE I. MAY v. ROBERT P. MAY, ET AL., ETC.

March 9, 1970.

Record No. 7111.

Present, All the Justices.

*Richard B. Chess, Jr.* (*Kelly, Louk, Lawson & Chess*, on brief), for appellant.

*Donald L. Bowman; J. Ronald Lynch*, for appellees.

GORDON, J., delivered the opinion of the court.

The question before us is whether the debts of the testator, Jess H. May, should be defrayed out of real estate devised to his grandchildren under the residuary clause of his will so as to exonerate personal property bequeathed to his widow under another clause of his will.

In Article First of the testator's will, he directed that debts be paid without specifying the source of payment. Under Articles Second and Third, he gave all his personal property, except his "personal bank account", and a life estate in his home real estate to his wife. Under Articles Fourth and Fifth, he gave all his residuary estate to or in trust for his grandchildren.[1]

---

[1] "FIRST: I direct that my just debts and funeral expenses shall be paid as soon after my death as shall be practicable.

May's estate was comprised of the following assets:[2]

| | | |
|---|---:|---:|
| Home real estate | $42,500 | |
| Two other tracts of real estate | 43,000 | |
|    Total real property | | $ 85,500 |
| Furniture, household possessions, automobiles and other tangible personal property | $ 2,600 | |
| Note made by G. Worthington Hipple and John B. Riordan (referred to in the record and herein as the "Hipple Note") | 21,350 | |
| Debentures | 50 | |
| Bank account (checking) | 2,850 | |
| Bank account (savings) | 1,150 | 28,000 |
| | | $113,500 |

Debts owed by May and his estate substantially exceeded the amount of the checking account, which was apparently the "personal bank account" referred to in Article Second of the will.

May's executors brought this suit seeking the advice and guidance of the court (1) whether the Hipple Note was bequeathed to May's

"SECOND: In the event my wife survives me, I give, devise and bequeath unto my wife, ELSIE I. MAY, all personal property of which I die seised and possessed, including all furniture, household possession and automobiles, but with the EXCEPTION of my personal bank account.

"THIRD: In the event my wife survives me, it is my desire that she be provided for during her lifetime and I give, bequeath and devise to her, for her own use and occupation during her life, the homeplace on the five acres of land, said five acres and homeplace being a part of my property at Route #1, Box 153A, Fairfax Station, Virginia.

"FOURTH: All the rest of my estate, real, personal or mixed, I give, devise and bequeath to my grandchildren, to share and share alike, provided at my death the youngest of my grandchildren has attained his or her legal majority. And in the event my wife, Elsie I. May, does not survive me, or at her death, all of my estate, real, personal or mixed, shall be divided equally among my grandchildren provided the youngest of them has attained his or her legal majority.

"FIFTH: If, at my death, the youngest of my grandchildren has not attained his or her legal majority, then the foregoing estate dispositions, devised and bequeathed to my grandchildren, I hereby give, devise and bequeath to my son, Robert P. May and WESLEY R. MARTIN, TRUSTEES, IN TRUST * * *.
"(* * *"

[2] The assets and values listed in the text are taken from the inventory and appraisement.

widow under Article Second of the will or to his grandchildren under the residuary clause of the will, and (2) if to the widow, whether the unpaid debts should be defrayed out of the proceeds of the Hipple Note or out of real estate passing under the residuary clause. The trial court held, *first*, that the Hipple Note was included in the personal property bequeathed to the widow under Article Second. *Second*, the court held that the Hipple Note, being part of the testator's "personal estate at large", was primarily liable for the payment of debts. This appeal by the widow challenges only the second holding.

To sustain the trial court, counsel rely primarily on *Baylor v. National Bank of Commerce*, 194 Va. 1, 72 S.E.2d 282 (1952), involving the following bequest: "I give and bequeath unto my said wife, Anne L. Baylor, absolutely, one-third of my personal estate." We held that the testator intended that his widow should receive one-third of his net personal estate, not one-third of his gross personal estate. Since the shares of the widow and the other beneficiaries were to be computed *after* payment of debts and other charges, all personal property held in the estate was characterized "personal property at large" and declared available for payment of debts and other charges.[3]

In *Baylor v. National Bank of Commerce, supra*, we cited and followed the rule adopted in *Wells v. Menn*, 158 Fla. 228, 28 So.2d 881 (1946), that when a testator bequeaths a fractional share of his estate, he intends to refer to a share of his net estate. As pointed out in the *Wells* case, it is unlikely that a testator intends one beneficiary to receive a fractional share of the gross estate and another beneficiary to receive a fractional share of the net estate. See also cases collected in Annot., 169 A.L.R. 903 (1947), cited in *Baylor v. National Bank of Commerce, supra*.

The rule of the *Baylor* case therefore has no application to the present case, which does not involve a fractional-share legacy. So we must turn to other rules that may be applicable to this case.

" '[A]s a general rule the personal estate is not only the primary,

[3] Although the term "personal property at large" or "personal estate at large" is used in several Virginia cases—*e.g.*, *Baylor v. National Bank of Commerce, supra*, and *Elliott v. Carter*, 50 Va. (9 Gratt.) 541 (1853), none sets forth a precise definition. The cases apparently use the term to describe personal property of an estate that is not earmarked by the will, expressly or impliedly, for distribution in satisfaction of any legacy.

but the only fund for the payment of legacies.'" *Marcy* v. *Graham*, 142 Va. 285, 296, 128 S.E. 550, 554 (1925).

But "where the language of a will combines real and personal estate in a residuary clause, a charge upon the real estate which is included in such residuum arises by implication for the satisfaction of the legacies previously given in the will, if such implication is not inconsistent with admissible extraneous circumstances[4] or other provisions of the will itself". *Id.* at 296, 128 S.E. at 554. And where real property and personal property are blended in the residuary clause, "the implication arises that the residuary legatees and devisees are only to receive what is left after *the debts and legacies* have been fully paid". (Emphasis supplied.) *Id.* at 298, 128 S.E. at 555.

And a special rule applies in the case of a legacy to the testator's widow. In such case, absent a contrary intention disclosed by the will, the real estate included in the residuum of an estate is charged with the payment of a legacy to the testator's widow where she elects to accept the benefits of the will in lieu of her statutory rights and the personal estate is insufficient to pay the legacy. *Muse* v. *Muse*, 186 Va. 914, 45 S.E.2d 158 (1947); *see Everette* v. *First Nat'l Bank, supra* n.4.

Unlike this case, the cases that have followed the rules set forth in the two preceding paragraphs involved pecuniary legacies to the widow. In each case, the court had no difficulty in discerning the testamentary intent to bequeath the specified amount of the legacy whether or not the personal estate was sufficient to pay debts and the legacy. The question here is whether Jess H. May intended to bequeath to his widow all his personal property, except a bank account, undiminished by any contribution for the payment of debts. If so, the blending rule of *Marcy* v. *Graham, supra*, should be applied to carry out the testamentary intent.

In the residuary clause of his will, May included a bank account and all real estate, subject to his widow's life estate in the home real estate. By excluding a bank account from the personal property bequeathed to his widow so that the account fell into residue, the

---

[4] The evidence in *Everette* v. *First Nat'l Bank*, 142 Va. 149, 128 S.E. 450 (1925), which followed the rule stated in the text, showed that the testator never owned sufficient personal property to pay the legacies provided for under his will. No evidence was introduced in this case to show the personal property owned by Jess H. May at any time before his death.

testator evidenced his intent that debts be paid out of the residuary personal property.

In our opinion, the will as a whole evidences an intent that the residuary real estate, which was combined with personal property in the residuary clause, be used to pay any outstanding debts after residuary personal property had been exhausted. This interpretation is consistent with the testamentary intent, expressed in Article Third, that May's widow "be provided for during her lifetime". And this interpretation is consistent with the presumed testamentary intent, reflected in the cases cited in the third preceding paragraph, to favor a non-renouncing widow.

Applying the blending concept of *Marcy* v. *Graham, supra,* we hold that the real property passing under Article Fourth of May's will is charged with the payment of debts, so as to exonerate the bequest of the Hipple Note to the widow. We therefore reverse the decree appealed from and remand the case for entry of a decree consistent with this opinion.

*Reversed and remanded.*