# Richmond.

## Todd and Others v. McFall and Others.

### March 9, 1899.

1. Legacies—*What Fund Chargeable—Intention to Charge Real Estate.*—As a general rule, the personal estate is not only the primary, but the only fund for the payment of legacies, and the real estate is not chargeable with their payment, in case of deficiency of personal estate, unless made so by the testator. The intention to charge the real estate, however, must be either expressly declared, or clearly deducible from the language and dispositions of the will.

2. Wills—*Partnership Real Estate—Devised as Real Estate--Legacies.*—A testator owning an interest in partnership real and personal property has the right, as respects the objects of his bounty, to distinguish between the two classes of property, and treat the personal estate as personalty, and the real estate as realty, and declare out of which fund pecuniary legacies shall be paid.

3. Wills—*Case in Judgment—Out of what Fund Legacies Payable—Subrogation.*—A testator bequeaths his personal property "subject to certain legacies hereinafter mentioned" to his nephews, and devises his real estate to the same nephews for life, with remainder in fee to their heirs, and then gives certain pecuniary legacies "payable from my estate." The time of payment of the legacies and the division of the real estate was postponed for several years in order to provide, as stated in the will, for the payment of a farm recently purchased. The personal estate was not sufficient to pay the debts and legacies.

 Held.—The personal estate alone is liable for the payment of the legacies, and the real estate is not bound to contribute to the legacies the amount diverted to pay debts of the testator.

4. Wills—*Legacies — Intention to Charge Real Estate.*—An intention to charge the real estate with the payment of legacies is inferred where pecuniary legacies alone are first given and no part of the real estate is specially devised, followed by a residuary clause devising and bequeathing the residue of the real and personal estate ; or where a testator devises his real estate, after a direction that debts and legacies be first paid ; or devises the remainder of his estate, real and

personal, after the payment of debts and legacies; or the devise is declared to be made after they are paid.

5. Debts of Decedent—*Primary Fund for Payment—Liens on Land.*—In the absence of a testamentary provision for the payment of debts, the personal property of a decedent is the primary fund for their payment, even though the debts be secured by a lien given by the decedent in his life-time on his real estate.

6. Chancery Practice—*Rehearing — Acquiescence — Estoppel.*—The mere lapse of ten years will not estop a party to a pending suit from filing a petition to rehear an interlocutory decree in the suit.

Appeal from a decree of the Circuit Court of Augusta county pronounced July 29, 1897, in the chancery cause of *Todd* v. *Todd's Ex'or and others,* on a petition therein filed wherein appellants were the petitioners, and appellee was the defendant.

*Reversed.*

The will construed in this cause was in the words and figures following, to-wit:

"*Know All Men by these Presents:*

"That I, Preston Todd, of Augusta county, Virginia, being of sound mind and disposing memory, and mindful of the uncertainty of human life, and thankful to God for the worldly goods I am possessed of, do make and declare this my last will and testament in manner as follows—viz.: I wish my executor as soon after my decease as convenient to collect from my brother, J. H. Todd, funds sufficient to pay my funeral expenses, and any unpaid expenses incurred in my last sickness—and pay. My property consists of the undivided half interest of all property, both real and personal, held and owned by J. H. & P. Todd, except the gray horse, 'Shiloh,' I claim as mine, and lay no claim to the horse called 'Bob,' and claimed by my nephew Rankin Todd. I will all my personal property, subject to certain legacies hereinafter specified, to my two nephews, James Todd and Rankin Todd. My real property, lying in Augusta and Highland counties, I will to the said two

nephews for life and to their heirs after them—should either or both have no issue, I authorize a devise of the said property by one or both respectively, as to his interest, except as to the twenty acres of woodland adjacent, A. A. Crawford, which I wish sold, whenever my brother and my executor deem proper, and I authorize my executor to convey my interest. I desire that the property devised, remain undivided, and the partnership heretofore existing to continue, by placing in my stead the said Rankin and James Todd, and terminate, if desired, by either or both of my said devisees the 1st May, 1883. In the event of my brother and the said two nephews not being able to get along properly, in the arrangement indicated, then I desire my executor to take control of my interest in the partnership for the time specified—that is, to May, '83. My object in this arrangement is to provide for the payment of the 'McCue Homestead.' I will and bequeath to Catherine McFall the sum of three thousand dollars, payable from my said estate on or before the 1st day of May, 1890. Should Catherine McFall die before that time, and her daughter be living, then I desire the said amount shall be paid to her, and paid to either in payments of five hundred dollars per year. And further I desire and will that Catherine McFall be paid one hundred and eighty dollars annually to 1st May, 1890, or to her daughter should she survive her mother. I will and bequeath fifty dollars *per annum*, for ten years from my death, to 'Mossey Creek Presbyterian church,' to be paid to the deacons annually for the benefit of the said church. My horse, 'Shiloh,' I give to Howard Todd. And further, I desire my executor to have respectable tombstones placed over my grave and also over my mother's. The partnership existing between my brother and myself has existed for many years without there ever being any settlement between us, and although in such settlement there could but be a large amount in my favor, I desire that my brother be not required to make such settlement, but pay all my expenses to my death, from the said

partnership.   And I hereby nominate and appoint D. N. Van-Lear as executor of this my will, and whom I desire to qualify without security.

"In testimony whereof, I have hereto signed my name, this 23d May, 1878.

PRESTON TODD."

Witnesses:

    A. A. CRAWFORD,
    HUGH BAXTER..

*George M. Cochran* and *Elder & Elder*, for the appellants.

*J., J. L.*, and *R. Bumgardner* and *H. St. George Tucker*, for the appellee.

RIELY, J., delivered the opinion of the court.

This case presents for decision the single question, whether the legacies to Catherine McFall are a charge upon the real estate devised to James Todd and Rankin Todd.

It is universally conceded that as a general rule the personal estate is not only the primary, but the only fund for the payment of legacies.   It is equally a general rule that the real estate is not chargeable under the law with their payment, if the personal estate proves insufficient, unless the testator has charged the land with their payment.   This he may do either in express terms or by implication, but his intention to do so must be clear and manifest.   And so in every case, whether the real estate is charged with the payment of legacies is a question of intention.   The intention to charge must be either expressly declared, or be clearly deducible from the language and dispositions of the will.

In the case of *Lupton* v. *Lupton*, 2 Johns. Ch. 614, Chancellor Kent said : " The real estate is not, as of course, charged with the payment of legacies.   It is never charged, unless the testator intended it should be, and that intention must be

either expressly declared, or fairly and satisfactorily inferred, from the language and dispositions of the will. This general rule does not seem to admit of any dispute."

In the case of *Lee* v. *Lee*, 88 Va. 805, it is said by Judge Lewis: "The testator, however, may charge the land, and this may be done either expressly or by implication; but in any case the intention to charge must be clear—so clear as to admit of no reasonable doubt."

In the case at bar, the testator, before proceeding to dispose of his estate, states in his will of what it consists. It is an undivided half interest of all property, both real and personal, held and owned by J. H. and P. Todd, except the gray horse "Shiloh," which he claimed as his individual property. It appears that the testator, Preston Todd, and his brother, James H. Todd, were engaged in the business of farming and dealing in cattle; that James married and raised a family of children, but that Preston never married; that they lived together all of their joint lives; that all of their business was carried on in the name of J. H. & P. Todd, James giving his attention to all the outside transactions of their business, buying and selling the cattle and marketing the crops, while Preston cultivated and managed the farms, and looked after the stock; and that all their lands and personal property were jointly held and owned by them.

Whether the lands were owned in partnership and impressed with the character of personalty, as is the case in equity for certain purposes with land so held, or whether they were held by James H. Todd and Preston Todd simply as joint owners, it is unnecessary to decide or consider. The testator, in making his will, made a clear distinction between the lands and personal property owned by J. H. and P. Todd. He regarded and treated his share of the personal property as personalty, and his share of the lands as realty. He had the right, as respects the objects of his bounty, in disposing of his estate, so to regard and treat his property, and, in seeking for his inten-

tion, in the construction of his will, as to the fund from which the legacies are payable, his property must be so regarded and treated. Whatever right creditors might have to complain, clearly his beneficiaries cannot do so.

The testator, after stating of what his estate consists, bequeaths all his personal property, "subject to certain legacies hereinafter specified," to his two nephews, James Todd and Rankin Todd. He next devises all his real estate to them for life, and their heirs after them. He then directs that the property devised remain undivided, and that the partnership previously existing be continued until May 1, 1888, by placing in his stead his said nephews. The object of this arrangement was, as he states, to provide for the payment of the "McCue homestead," which, it seems, he and his brother had recently purchased.

Having made the foregoing dispositions of his estate, he comes now to the legacies which he had in mind and referred to when bequeathing his personal property. He gives to Catherine McFall the sum of $3,000, payable after May 1, 1890, in annual instalments of $500, and also the sum of $180 to be paid annually to May 1, 1890, said moneys to be paid to the daughter of Catherine McFall, if the latter should die before May 1, 1890. He then gives a legacy of $50 for ten years to "Mossey Creek Presbyterian church;" and his horse, "Shiloh," to his nephew, Howard Todd.

It thus appears from the will that the testator expressly charged the legacies on his personal property. It is given to his nephews, James and Rankin Todd, subject to the legacies to be thereinafter specified. The presumption is that he considered the personal property ample to discharge the legacies, or he would not have bequeathed it subject to the legacies, for unless it was more than sufficient to pay them, the bequest was worthless and meaningless, and it cannot be supposed that the testator meant to do a vain and useless thing by the bequest of his personal property. The record shows that the personal

property owned by J. H. and P. Todd was worth about $10,000, and the testator's part thereof was more than sufficient to discharge the legacies, if it had not been absorbed in the payment of debts, as to which he does not seem to have been informed, since he mentions no debt except that due for the "McCue homestead," for whose payment he made special provision.

Having bequeathed his personal property subject to the legacies, he then specifically devises his real property to his said two nephews, without making any reference whatever to the legacies. It was entirely natural that he should not refer to them, for if he believed that the personal property was ample to pay them, which is an irresistible inference from the gift of the personal property subject to the legacies, any reference to the legacies in disposing of the real property was unnecessary; or if he did not mean to charge the legacies on the land in case the personal property proved insufficient for their payment, it was in that case equally unnecessary.

The only part of the will that affords any foundation whatever for the contention that the legacies in question constitute a charge upon the land is the language in which the legacy of $3,000 to Catherine McFall is expressed. The testator says: "I will and bequeath to Catherine McFall the sum of three thousand dollars, payable from my said estate on or before the 1st of May, 1890." It was argued that the testator, by the use of the words, "said estate," in this connection, referred to his entire estate, both real and personal, and thereby intended to charge the legacy on the land as well as on the personal property. The testator, in the preceding part of his will, had disposed of both his personal and real estate, referring to and bequeathing the one as his "personal property" and referring to and devising the other as his "real property," and from this fact the conclusion is sought to be inferred that, in making the legacy payable from his "said estate," he intended to use the word "estate" in a technical sense, and to include both his personal and real property.

The will was evidently not written by a lawyer, and it would be an extreme presumption that the testator was aware of any technical distinction between "property" and "estate." Both words are in familiar and common use, and indifferently applied to either species of property, or to both. The mere use of the word "estate," as used by the testator in giving the legacy to Catherine McFall, is at least equivocal, and cannot avail to enlarge the fund for the payment of the legacy, and make it also a charge on the land if the personal property be deficient.

The words "said estate," as used by the testator, are more naturally referable to the personal property than to his entire estate, meaning by "estate" both species of property. The use of the word "said" in connection with "estate" would seem to make it refer directly to the personal property, upon which the testator, in the preceding part of his will, had in express terms charged the payment of the legacies. The legacy is made payable from his "said estate," that is, the particular estate upon which he had already and expressly charged it. This seems by far the most natural construction of his language.

The expression referred to is the only one contained in the will which gives any color to the construction that the legacies were intended to be a charge upon the land. It very clearly does not meet the requirement of the law that to sustain the charge the intention must be expressly declared, or be a fair and satisfactory inference from the language and dispositions of the will.

The case at bar differs widely from the cases of *Crouch et als.* v. *Davis' Ex'or*, 23 Gratt. 62, and *Wood and Wife* v. *Sampson's Ex'or et als.*, 25 Gratt. 845, in which it was held that the legacies were charged on the land. The conclusion that they were so charged was deduced from the fact that, in the wills construed in those cases, pecuniary legacies alone had been first given, and no part of the real estate been specifically devised,

and there was a residuary clause, devising and bequeathing the residue of the real and personal estate, thus blending the two kinds of property into a common fund, and thereby plainly manifesting a purpose to make no distinction between them. It was, therefore, held in those cases, as the well established doctrine of both English and American courts, that, inasmuch as pecuniary legacies alone were given, and the will contained no previous devise of any part of the real estate, the residue could only mean what remained after satisfying the legacies.

And an intention to charge the real estate is likewise inferred where a testator devises the real estate, after a direction that debts and legacies be first paid, or previously paid; or devises the remainder of his estate, real and personal, after payment of debts and legacies; or the devise is declared to be made after they are paid. *Lupton* v. *Lupton*, 2 Johns. Ch. 614; and *Lee* v. *Lee*, 88 Va. 805.

But the case before us is very different. Here, all the real estate was specifically devised, as was also all the personal property, it is true, bequeathed; but the latter was expressly given subject to the legacies. Here, there was no devise by the testator of the remainder of his estate, real and personal, after the payment of debts and legacies; nor, after general pecuniary legacies, and no specific devise of any portion of the real estate, a residuary clause blending the residue of the real and personal estate into a common fund; no direction that the debts and legacies be first, or previously, paid; nor a devise declared to be made after they are paid.

It was contended by counsel that, as the legacies were expressly made a charge on the personal property, and it was consumed in the payment of debts, Mrs. McFall is entitled to be paid her legacy out of the real estate, and especially to the extent that the personal property was applied to the relief of the lien on the " McCue homestead." The answer to this position is that the will not having charged the real estate with the payment of the debts, nor made any other provision for

their payment, the law makes the personal property the primary fund for their satisfaction; and if the testator was mistaken as to the value of his personal property, and it has proved inadequate to pay both debts and legacies, the latter must abate to the extent of the disappointment, and cannot be reimbursed out of the land for the loss. A legatee has no right to call upon the devisee to contribute to the payment of the legacy, unless the real estate be charged with its payment, not even where the personal property has been applied in exoneration of the land from a mortgage debt or vendor's lien, if the debt was contracted and the mortgage or lien on the land was created by the testator himself. *Elliott* v. *Carter*, 9 Gratt. 541; *Wythe* v. *Henniker*, 2 Myl. & Ke. 635; *Waring* v. *Ward*, 7 Vesey 332; *Cumberland* v. *Codrington*, 3 Johns. Ch. 229; 2 Jarman on Wills (Bigelow's Ed.), 683; 2 Spence's Eq. J., 833; 2 Sugden on Vendors, 680; and Adam's Equity, 261 and note.

It was finally insisted that even if the legacies were not chargeable on the land, yet as the court so decided by the decree of May 23, 1887, and the appellants acquiesced in the decision for ten years, it is now too late to ask that it be reheard and reversed. It is certainly not clear that the court so decided. It simply held that Catherine McFall, if alive on May 1, 1890, was "entitled out of the estate of Preston Todd to the sum of three thousand dollars, payable in annual instalments of five hundred dollars each," and fixed the time that interest should run on the instalments, and on the annuity of one hundred and eighty dollars. Not a word was said in the decree as to the legacies being a charge upon or payable out of the real estate in the event that the personal property was exhausted in the payment of debts, or proved inadequate to satisfy both debts and legacies. The appellants assert that they did not understand from the language of the decree that the court meant to decide that the real estate was chargeable with the legacies, and that as soon as they learned that the decree was being given that construction, they took steps to have it re-

heard and corrected in this respect. The decree is ambiguous and of doubtful meaning, and being interlocutory, without saying more, it cannot be held that the appellants are estopped from having it reheard, and the will duly construed.

The court being of opinion, for the reasons herein given, that the legacies are not a charge upon the land, the decree of the Circuit Court must be reversed, and the cause remanded to be further proceeded in accordingly.

*Reversed.*