# Richmond.

ARMENTROUT AND ANOTHER v. ARMENTROUT AND OTHERS.

November 17, 1910.

Absent, Cardwell, J.

1. WILLS—*Legacies—Fund for Payment—When Chargeable on Real Estate.*—As a general rule the personal estate is not only the primary, but the only fund for the payment of legacies, and, if this proves insufficient, the real estate of the testator is not chargeable with their payment unless the testator has so charged it either expressly or by clear and manifest implication. The intention to charge the real estate must be either expressly declared or be clearly deducible from the language and dispositions of the will.

2. WILLS—*Legacies—Fund for Payment—Blending of Real and Personal Estate—Residuum—Case in Judgment.*—Where the language of a will blends in a common mass real and personal estate, a charge upon the real estate in such residuum may arise by implication for the satisfaction of legacies previously given in the will, when such implication is not inconsistent with admissible extraneous circumstances, or other provisions of the will itself. But this doctrine would not apply to a case where the testator gave his executor no power over his real estate, and by the first clause of his will gave to five nieces and nephews legacies of $1,000 each, to be paid with convenient speed after his death, and by the second clause gave to his widow and foster-child, to both of whom he was devotedly attached, "all the residue of my personal estate and real estate." Here there has been no such blending as will charge the real estate with the balance due on the legacies. The language and context of the will indicate that the testator believed that there would be a residue of personality, and there is no clear and manifest intention to charge the real estate.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*Sipe & Harris,* for the appellants.

*J. B. Stephenson, Charles D. Harrison* and *Laird L. Conrad,* for the appellees.

HARRISON, J., delivered the opinion of the court.

W. A. Armentrout, a resident of Rockingham county, died in November, 1908, leaving real and personal estate. About two weeks before his death he made and published his last will and testament, which is as follows:

"I, W. A. Armentrout, being of sound mind and disposing memory, do make and publish this my last will and testament, hereby revoking all former wills by me at any time made.

"1. I bequeath to each of my nephews and nieces, Frederick Conn Armentrout, Charles Raphael Armentrout, Fannie J. Earman, George Pittman Ergenbright and Alice Elice Ergenbright, the sum of one thousand dollars ($1,000.00); and the same to be paid to them by my executor with convenient speed after my death.

"II. I devise and bequeath to my wife, Christina J. Armentrout, and Lucy M. Armentrout, wife of R. T. Armentrout, all the residue of my personal estate and real estate; and each of which, to have share and share alike.

"III. I hereby appoint R. T. Armentrout, executor of this, my will and testament, and of whom no bond shall be required in administration.

"In witness whereof, I have hereunder written my name, this 24th day of October, 1908.

"W. A. ARMENTROUT."

"Signed by the said testator, W. A. Armentrout, and for his last will and testament in the presence of us, who, at

his request, in his presence and in the presence of each other, have subscribed our names as attesting witnesses.

                              "P. B. F. Good,
                              "L. B. Yancey.
                              "O. F. Armentrout."

The record shows that the testator was married more than thirty years before his death to the appellant, Christina J. Armentrout. Their married life was shown to have been throughout most exemplary and affectionate. No children were born of the marriage, but about twenty years before the death of the testator Lucy Ergenbright, a niece of his wife, then a child about three years of age, was brought into the family, and from that time until his death the devoted relation of parent and child existed between herself and her foster-father. The record further shows that of the five lega- tees mentioned in the first paragraph of decedent's will, two were nephews of the testator and one a niece, while the re- maining two were not related by blood to the testator but were respectively a grand-nephew and grand niece of his wife. It further appears that the decedent left a farm con- taining about one hundred and eighteen acres, which was variously estimated to be worth from six to eight thousand dollars, on which he and his family had resided for many years and which had been paid for in part by his wife's means. The decedent left also personal estate consisting of farm- ing implements, live stock, bank deposits, stocks and bonds which the appraisement of his personal estate shows aggre- gated over four thousand dollars, with practically no indebt- edness outstanding.

The personal estate being insufficient to pay the five lega- cies mentioned in the first clause of the will, the legatees claim that the deficiency is a charge upon the land devised in the second clause to the wife and foster-daughter of the testator; the contention of the legatees being that the second

clause of the will blends into one mass the real and personal estate, and only gives the wife and foster-daughter the residue of such blended mass after the legacies mentioned in the first clause have been satisfied. Whether or not this contention is sound is the single question presented for our determination.

In *Todd* v. *McFall*, 96 Va. 754, 32 S. E. 472, where the same question was involved, Judge Riely, speaking for this court, says: "It is universally conceded that as a general rule the personal estate is not only the primary, but the only fund for the payment of legacies. It is equally a general rule that the real estate is not chargeable under the law with their payment, if the personal estate proves insufficient, unless the testator has charged the land with their payment. This he may do either in express terms or by implication, but the intention to do so must be clear and manifest. And so in every case, whether the real estate is charged with the payment of the legacies is a question of intention. The intention to charge must be either expressly declared, or be clearly deducible from the language and dispositions of the will."

In the case of *Lee* v. *Lee*, 88 Va. 805, 14 S. E. 534, Judge Lewis says: "The testator, however, may charge the land, and this may be done either expressly or by implication; but in any case the intention to charge must be clear—so clear as to admit of no reasonable doubt." This language of the learned judge is cited with approval in *Todd* v. *McFall, supra.*

Again, in *Smith* v. *Mason*, 89 Va. 715, 17 S. E. 4, Judge Lacy, delivering the opinion of the court, quotes with approval from the Am. & Eng. Ency of Law the rule as follows: "The personalty is not only the primary but the only fund for the payment of legacies, unless they are charged upon the realty by express direction or by necessary implication. What language will amount to an express charge must always be a matter of construction and interpretation, depending upon the terms employed in each individual case. A charge will

be implied if the language of the will indicates that the testator intended the legacies to be paid, knowing that his personal estate would be insufficient for the purpose, or if it appear that in giving the legacies he had the real estate in mind."

In the will under consideration the testator gives his executor no power to sell his real estate, nor does he give him any manner of control over it. In the first clause of the will he gives the five legacies of $1,000 each, and directs them to be paid by his executor with convenient speed after his death. The testator must be presumed to have known that the only means the executor would have of paying the legacies was out of his personal property, unless they were charged upon the real estate by express direction or necessary implication. There is nothing in the will to indicate that the testator intended the legacies to be paid, "*knowing* that his personal estate was insufficient for the purpose," or that in giving the legacies "he had the real estate in mind."

After the dispositions made in the first clause, the testator proceeds in the second clause to provide for his wife and foster-child in the following language: "I devise and bequeath to my wife, Christina J. Armentrout, and Lucy M. Armentrout, wife of R. T. Armentrout, all the residue of my personal estate and real estate; and each of which to have share and share alike." So far from the testator intending the legacies to be paid, knowing that his personal estate was insufficient for the purpose, this second clause clearly shows that he was acting under the impression that his personalty was ample for that purpose, for he thereby gives those for whom, as appears, his affection and interest was strongest, *all* the residue of his personal estate, and, therefore, in giving the legacies he could not have had the real estate in mind.

The language of the second clause relied on as showing that the real and personal estate were blended in one mass and only the residue of both given to his wife and foster-

daughter is as follows: "I devise and bequeath to my wife, Christina J. Armentrout, and Lucy M. Armentrout, wife of R. T. Armentrout, all the residue of my personal estate and real estate." It is not contended that this language creates a direct charge upon the real estate, but that there is by implication a charge created thereby on the real estate to make good the legacies. In support of this contention the cases of *Crouch* v. *Davis*, 23 Gratt. 62, and *Wood* v. *Sampson*, 25 Gratt. 847, are relied on.

These cases hold that where the language of a will blends in a common mass a residuum of real and personal estate, a charge upon the real estate in such residuum may arise by implication for the satisfaction of legacies previously given in the will, when such implication is not inconsistent with admissible extraneous circumstances or other provisions of the will itself. In the first case, *Crouch* v. *Davis*, the language is: "Whatever balance I may be worth I want given to my sister Ann Crouch and her children." This language, it is held, blended the real and personal property into a common mass. In *Wood* v. *Sampson*, the language is: "All the remaining estate, property and credits, whether real or personal, which I may own at my death." This is held to have "blended the real and personal estate into a common fund."

The case of *Downman* v. *Rust*, 6 Rand. 587, is also relied on by appellees, where the language of the will is, "All the rest of my estate real and personal." Clearly a blended residuum.

In the fourth and last case relied on, of *Lewis* v. *Darling*, 16 How., side pages 1-7, 14 L. Ed. 819, the language employed by the testator is, "And as to all the rest and remainder of my property, debts, rights and actions of what kind and nature soever that may belong or appertain to me."

In these cases the blending of the residuum of the real and personal estate into one mass is made the crucial prerequisite to charging real estate with the payment of legacies. The

language employed in each is essentially different from that used in the present case, and, therefore, those decisions cannot be regarded as furnishing a controlling analogy for the construction of the will before us. In the case at bar the language of the will is: "I devise and bequeath to my wife, Christina J. Armentrout, and Lucy M. Armentrout, wife of R. T. Armentrout, all the residue of my personal estate and real estate. Here the testator uses apt language—he uses the word "devise" and he uses the word "bequeath," one being applicable to the real estate and the other to the personal estate, each being kept distinct in his mind as a classification of property. He does not blend or merge the two kinds of property into a single term, such as "All the rest of my estate real and personal," or "whatever balance I may be worth," but he designates the one as the residue of his "personal estate" and the other as "real estate," repeating the word "estate" with its appropriate adjective, thus preserving the segregation of the two classes of property. A still more pregnant phrase is the designation by the testator of "the residue of my personal estate." This language, taken in connection with the context of the will, can only mean, as already pointed out, that the testator believed there would be a residue of personalty; and this inference has the effect to contravene the idea of a testamentary intent to charge his real estate.

This was held to be its effect in *Reed* v. *Cather*, 18 W. Va., 263, where the court says: "Intention to charge the land, implied from the introductory words, is repelled by the contrary implication arising from the bequest of a personal residue, which the testator supposed would remain after satisfaction of the legacies." Citing a number of authorities.

In view of the fact that the executor is given no control over the real estate, and is directed to pay the legacies with convenient speed, which he could only do out of the personalty, and in view of the further fact that by the residuary

disposition of the remainder of his personal estate the testator manifestly acted under the belief that his personal property was more than sufficient to satisfy the legacies, we think that it may be safely affirmed that, looking alone to the language of the will, without the aid of extraneous circumstances, it cannot be said that it was "clearly and manifestly" the intention of the testator to impose a charge upon his real estate in favor of the legacies (*Todd* v. *McFall, supra*) ; or that the intention to charge the real estate is "so clear as to admit of no reasonable doubt" (*Lee* v. *Lee, supra*), or that the intention to charge is a "necessary implication" from the language employed (*Smith* v. *Mason, supra*).  On the contrary, we are of the opinion that the most reasonable interpretation of the will is that the testator did not intend to charge the real esate devised to his wife and foster-child with the payment of the legacies previously given; that he had no thought of turning his wife, who had for more than thirty years shared his joys and sorrows, out of the modest home where they had lived during those years, in order to satisfy legatees who were so little known to him that he had to ask for their names when his will was written.  The testimony of the scrivener of the will, which was objected to by the legatees, has not been considered in arriving at the conclusion reached, and, therefore, it is unnecessary to pass upon that exception.

The circuit court having held the legacies to be a charge upon the real estate, its decree must be reversed and the cause remanded for further proceedings not in conflict with this opinion.

*Reversed.*