# Wytheville.

LILLIE THOMAS, ET ALS. V. JUDITH A. NOLEN, ET AL.

June 12, 1930.

Absent, Campbell and Holt, JJ.

The opinion states the case.

*Hooker & Sanford,* for the appellants.

*R. E. Woolwine,* for the appellees.

PRENTIS, C. J., delivered the opinion of the court.

The single question presented to this court by this record is whether or not Jack Nolen, one of the children of Charles P. Nolen, deceased, has a substantial interest in his father's estate as one of his devisees. The clause of the will which is to be construed reads:

"I will that after my burial expenses and just and honest debts are paid—I will the remainder of my property of all kind and description both real and personal to my wife, Judia A. Nolen, and with the right to collect any and all debts that are due me and to sell or dispose of any or so much of the said property as may be necessary for the comfort and support of her and family during her natural life but are not to sell or use any of said property and use the proceeds in favor of any one child against any other and at her death the remainder of said property both real and personal to be sold and disposed of as the law may direct and all of my children to be made equal out of the proceeds with the following exceptions, to-wit: My daughter Lou is to have five hundred dollars ($500.00) less than the other four children on account of her disobedience. My daughter, Sarah L. Thomas, has had three hundred dollars ($300.00) advanced and my daughter, Minnie A. Thomas, has had six hundred ($600.00) advanced which is to be accounted for in the final settlement, and I will the two idiots one dollar ($1.00) each."

The testator had seven children, among them two girls, one who died a short time before the date of the will, and the other since. The uncontradicted testimony from their mother, sister, and two other witnesses is that these two were never named, died young, and that the testator always referred to them as idiots. It is also shown that Jack Nolen is feeble-minded. The contention of the appellants that when the testator stated in his will that he devised to the two idiots $1.00 each, he, of necessity, meant Jack Nolen and his idiot sister and that the testator could not have referred to the other sister who had died shortly before the will was executed.

On the contrary, the appellees contend that as the testator never referred to Jack Nolen as an idiot, the descriptive words "two idiots" referred only to the two idiot girls who were never given names. Of course, the general rule is that the words of a will are construed with reference to the facts as they exist at the time of its execution. It is contended, however, in this case that this rule should not be applied here because this testator was a very old man who wrote his own will, certainly commenced and probably finished writing it before the death of one of his idiot daughters, and executed it shortly before his own death; and that the preceding words in the same clause of the will clearly indicate that he never intended to refer to his feeble-minded son Jack as one of these two idiots. The language under consideration which supports this contention is that "all of my children to be made equal out of the proceeds with the following execeptions, to-wit: My daughter Lou is to have five hundred dollars ($500.00) less than the other four children on account of her disobedience. My daughter Sarah L. Thomas has had three hundred dollars ($300.00) advanced,

and my daughter Minnie A. Thomas has had six hundred ($600.00) advanced, which is to be accounted for in the final settlement, and I will the two idiots one dollar ($1.00) each." It is obvious then that it will be impossible to include Jack Nolen as one of the two idiots and at the same time give effect to the provision as to the division between his other children. The provision for equality between his daughter Lou and his four other children subject to the advancements and exceptions cannot be ignored. This is decisive because there were not four other children without counting Jack Nolen as one of these four. There are degrees in mentality, and while Jack Nolen is described as "feeble-minded" he was never described as an "idiot." The language just quoted is perspicuous. It provides for equality subject to exceptions which are clearly expressed and need not be repeated. The two idiots are excluded. This exclusion of "the two idiots" when considered in connection with the evidence as to the circumstances and as to the family of the testator creates a latent ambiguity. In such cases it is well understood that parol testimony may be introduced to clarify such an ambiguity.

The trial court held that Jack Nolen was not one of the two idiots referred to in the will, but that he was one of the four children other than his daughter Lou, and that the testator intended him to share the estate equally with his sisters, subject to the exceptions stated in the will. In construing wills the court will give effect to the intentions of the testator, however obscurely expressed, if legal and ascertainable. It is also true that the language of the will must be first considered. Bearing these rules in mind we have no doubt whatever that the trial court rightly adjudged that Jack Nolen was not one of the two idiots referred to in

his father's will.  On the contrary, it seems perfectly clear that exclusive of the two idiots he was clearly indicated as one of the children who were to take under the will.

The decree of the trial court will therefore be affirmed.

*Affirmed.*