# Wytheville

GRAYSON M. WHITEHURST, ETC. V. A. J. WHITE, ET AL.

June 15, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Tazewell Taylor* and *N. T. Green,* for the appellants.

*James G. Martin,* for the appellees.

HOLT, J., delivered the opinion of the court.

In this cause we are to determine if certain legacies to a testator's children are charges upon his real estate. The trial court held that they were not.

The will in judgment bears date July 14, 1927. The testator died on April 6, 1931, and left surviving him his widow, Mollie J. D. Whitehurst, three children of a previous marriage, namely, Frank P. Whitehurst, Annice Jackson White, the wife of Cecil R. White, and Birdie Elizabeth Williams, the wife of E. L. Williams, and eight children by his second wife, Mollie J. D. Whitehurst, namely, the petitioners here, Grayson M. Whitehurst, Mollie DuPuy Whitehurst, Susan Eldridge Whitehurst, Edna Morton Whitehurst, Indie Knight Whitehurst, George DuPuy Whitehurst, DuPuy Whitehurst and William Lee Whitehurst, Jr., the last three of whom were infants at the time of the death of their father, aged respectively twenty years, nineteen years and sixteen years. The said George DuPuy Whitehurst has sub-

sequently, and prior to the institution of these proceedings, attained his majority. One of the petitioners, Mollie DuPuy Whitehurst, who sues by Grayson M. Whitehurst, her committee, is a person of unsound mind.

The testator directed that his debts be paid and that a mausoleum be built. The will then goes on to provide:

"I dispose of my property and estate as follows:

"First: I give and bequeath to my wife Mollie J. D. Whitehurst the sum of fifty thousand dollars in lieu of her dower and all other rights in my estate of every kind whatsoever.

"Second: I give and bequeath to each of my three children by my first wife, namely, Frank P. Whitehurst, Annice J. White and Birdie Williams, the sum of thirty-five thousand dollars to be paid to and accounted for by my executors to them as follows: To each of them the sum of twenty thousand dollars as soon after my death as may be convenient in the administration of my estate, and to each of them the interest or income from the sum of fifteen thousand dollars for his or her life, and at his or her death the said principal sum of fifteen thousand dollars, left for life, to go to his or her issue then living, *per stirpes*. In case any one of the said three children should die without leaving issue, then the interest or income from the said fifteen thousand dollars to go to the other of said children for their lives, and at their death the principal thereof to go to their issue then living, *per stirpes*.

"Third: I give and bequeath to my niece Lillian Lambert the sum of forty-five hundred dollars in cash and her note for five hundred dollars now held by me.

"After all of the above legacies and bequests have been paid and provided for in full, I dispose of my property and estate as follows:

"Fifth: I give and bequeath to each of my children by my wife Mollie J. D. Whitehurst the sum of thirty-five thousand dollars, to be paid to and invested for and accounted for by my executors to them as follows: To my

son Grayson M. Whitehurst, now of age, the sum of ten thousand dollars as soon after my death as may be convenient in the administration of my estate, the sum of ten thousand dollars on his arriving at the age of thirty years, and the interest or income from the sum of fifteen thousand dollars for his life; and at his death the said principal sum of fifteen thousand dollars, left for his life, to go to his issue living at his death, *per stirpes*. To each of the other of my said children by my wife Mollie J. D. Whitehurst the sum of five thousand dollars as they severally arrive at the age of twenty-five years, the sum of fifteen thousand dollars as they severally arrive at the age of thirty years and the interest or income from the sum of fifteen thousand dollars for life; and at their respective deaths the said principal sum of fifteen thousand dollars left for their respective lives, to go to their issue living at their deaths, *per stirpes*. And I direct my executors to pay to them the interest or income on the said sums until the said principal sums are paid to them as herein provided; and in case the income from my estate is not sufficient to pay full interest on said sums, then the interest or income to be paid *pro rata*. In case any of my said children provided for in this paragraph of my will should die unmarried and without issue prior to the payment to them of the respective bequests and devises to them, then I give and bequeath the portion of such child to his or her brothers and sisters of the full blood, namely, my children by my wife Mollie J. D. Whitehurst, equally to be divided among them in the same manner as the same would have been had and enjoyed by the child so dying.

"Sixth: I direct that my real estate be kept intact and not disposed of until my youngest child becomes twenty-five years of age.

"Seventh: All the rest and residue of my property and estate, of every kind whatsoever, I give, bequeath and devise to all of my children, in equal shares, but subject to the provision that my real estate is to be kept intact and not dis-

posed of until my youngest child becomes twenty-five years of age, and the division of the said rest and residue of my personal property and estate is not to be made until the same time.

"I nominate and appoint my sons, Frank P. Whitehurst and Grayson M. Whitehurst, and Wm. W. Old, Jr., executors of this my last will and testament, and desire that they give joint bond in the sum of fifty thousand dollars. And I direct my said executors, and the survivor or survivors of them, to collect the rents, issues and profits from all of my estate until my youngest child becomes twenty-five years of age, and account for the same to those entitled thereto, in accordance with the terms and provisions of this my will. I also nominate and appoint the said Frank P. Whitehurst, Grayson M. Whitehurst and Wm. W. Old, Jr., to be the guardians of my infant children.

"Given under my hand at the city of Norfolk, Virginia, this the 14th day of July, A. D. 1927.

"WILLIAM L. WHITEHURST."

From this it will be seen that the children of the first marriage are each given $20,000 absolutely and $15,000 for life.

The fifth item deals with the children of the second marriage. There is given to Grayson, $10,000 and $10,000 when he is thirty years old, and $15,000 for life. To each other child by the second marriage is given $5,000 as each reaches twenty-five years of age, $15,000 as each reaches thirty years of age, and $15,000 for life. Each member of each class receives $20,000 absolutely and a life estate in $15,000.

When the will was written Mr. Whitehurst had sufficient personal property out of which to meet all of these legacies. After it was written and before his death, in order to protect his interests in various loans made by him and secured on real estate, he was compelled to purchase several tracts of land conveyed in trust to secure them, with the result that at his death his personal estate after payment of his death and funeral expenses, etc., was not suf-

ficient to discharge in full the legacies to his children by the second marriage. This is strikingly true if the children of the first marriage are to be paid in full. If they are so paid and if the personalty remaining is divided out among the second set of children, and if the proceeds of realty are to be held apart, and later divided among all the children ratably, then the individuals of these two classes will take unequally. The record does not tell us what the difference would be, but there would be a substantial difference.

When we come to examine the will we are first struck with the modest provisions made for the widow. She is given $50,000, not much more than a child's share, if we remember that the personal estate when the will was written was sufficient to pay the legacies, and that there was in addition substantial real estate, the value of which does not appear—that is to say, she is given very much less than she would have taken in dower and as distributee had the will been renounced.

The next, and we may fairly say the manifest major, purpose of the testator, was to treat all of his children alike. This is naturally what we should have expected, for equality is equity. He gave to each of them $20,000 absolutely and to each of them a life interest in $15,000. The dates at which they are to take vary with their ages. Since there was personalty sufficient to pay all of them when the will was written, the order of payment was a matter of little or no moment, and so the priority of payment as he saw it was not a matter of priority at all but of sequence. *Harris* v. *Harris* (1912) 2 Ch. (Eng.) 241; *Beeston* v. *Booth* (1819) 4 Madd. Ch. 161, 56 Eng. Reprint 667; *Thwaites* v. *Foreman* (1844) 1 Colly. Ch. Cas. 409, 63 Eng. Reprint 477.

The fact that the children of the first marriage were to be first paid was not because they were preferred but because they were of age and were prepared to take. All of the children of the second marriage, except one, were under age. Had the bequest to them been made immediately available they still could not have been paid directly. Costs

incident to guardianship would have been necessary and so payments to them were deferred, hence the desirability of sequence in payments.

In varying phrases, but with a common purpose, courts have, in no uncertain words, undertaken to tell us that we must, when possible, sustain a testator's intention. "This rule is familiar and elementary and to it all others are subordinate and subservient." *Penick's Ex'r* v. *Walker*, 125 Va. 274, 99 S. E. 559, 560. Other citations in indefinite numbers to the same effect might be added.

Again, while a will ordinarily speaks as of the date of the death of the testator, yet in its construction we try to see things as he saw them when it was written. We place ourselves "as nearly as possible in the situation of the testator at the time of the execution of this will." *Widgeon* v. *Widgeon*, 147 Va. 1068, 133 S. E. 353, 355.

Where a will refers to an idiot son, that son who was deemed by the testator to be an idiot when he wrote the will is meant. *Thomas* v. *Nolen*, 154 Va. 446, 153 S. E. 647. Of course the meaning of the testator rests in the words he uses. All that we can do is to give them the meanings and definitions which he possibly might have intended. *Swan* v. *Swan's Ex'r*, 136 Va. 496, 117 S. E. 858. But in this the utmost flexibility is permissible. The same words in varying circumstances may be differently defined.

"As it is extremely rare to find two cases alike in all respects, little or no aid can be derived by a court in construing a will from prior decisions construing other wills. It is not enough that the same words in substance, or even literally, have been construed in other cases. It often happens that the same identical words require different construction according to the context and the peculiar circumstances of each case." *Rhett* v. *Mason*, 18 Gratt. (59 Va.) 560; *Conrad* v. *Conrad*, 123 Va. 711, 97 S. E. 336; *Bennett* v. *Bradley*, 149 Va. 746, 141 S. E. 756.

The general rule is that personal property is not only the primary but the only fund for the payment of

legacies. They are to be charged against the real estate only by express terms or by clear implication. *Todd* v. *McFall,* 96 Va. 754, 32 S. E. 472; *Carter* v. *Meade, Trustee, ante,* page 500, 169 S. E. 722, opinion this day delivered.

This rule, however, is somewhat softened when we come to view the legacies to children otherwise unprovided for. It is natural to assume that children are one's first concern and that there is no intention to discriminate against them or between them. 2 *Lomax Executors,* 90, 171; *Hogg* v. *Browning,* 47 W. Va. 22, 34 S. E. 754; *Gorman* v. *McDonnell,* 127 Ala. 549, 28 So. 964; 19 Am. & Eng. Enc. of Law (2 ed.) 1352.

■ Where a testator himself blends his properties it is not for the courts to separate them.

"There is another rule of construction which is well settled in this State, and that is that where the language of a will combines real and personal estate in a residuary clause, a charge upon the real estate which is included in such residuum arises by implication for the satisfaction of the legacies previously given in the will, if such implication is not inconsistent with admissible extraneous circumstances or other provisions of the will itself. So it has been held in *Downman* v. *Rust,* 6 Rand. (27 Va.) 587, where the language was, 'all the rest of my estate, real and personal;' in *Crouch* v. *Davis,* 23 Gratt. (64 Va.) 62, where the language was, 'whatever balance I may be worth I want given to my sister Ann Crouch and her children;' in *Wood* v. *Sampson,* 25 Gratt. (66 Va.) 847, where the language is, 'all the remaining estate, property and credits, whether real or personal, which I may own at my death;' and in *Lewis* v. *Darling,* 16 How. 1, 14 L. Ed. 819, the language is, 'all the rest and remainder of my property, debts, rights and actions, of what kind and nature soever.' In *Armentrout* v. *Armentrout,* 111 Va. 348, 69 S. E. 333, the language used was held not to charge the real estate with legacies." *Marcy* v. *Graham,* 142 Va. 285, 128 S. E. 550, 554.

In the light of these general rules and bearing constantly

in mind the fact that all rules are subservient to the testator's intention, let us look at the will itself.

In item 3 it is said: "After all of the above legacies and bequests have been paid and provided for in full I dispose of my property and estate as follows." Manifestly the testator here dealt with his entire estate as one fund or reservoir out of which these legacies were to be paid. He went on to say "and I direct my executors to pay to them the interest or income on said sums until the said **principal** sums are paid to them as herein provided; and in **case the** income from my estate is not sufficient to pay full interest on said sums, then the interest or income is to be **paid** *pro rata.*" These executors were to pay this interest, **not from** income or from interest from personalty only, but from the entire estate. "Estate" is a comprehensive term and covers all forms of property. *Neblett* v. *Smith*, 142 Va. 840, 128 S. E. 247. Income from every source was to be used to pay these legatees.

Item 6 directs that the real estate be kept intact until the youngest child becomes twenty-five years old. This is relied upon as showing that there was no intention to blend real and personal property, and it would show the absence of any such intention if it stood alone. But we are to read the will as a whole and reconcile its provisions if possible. With the exception of Grayson, all the children of the second marriage were to receive $5,000 as they severally arrived at the age of twenty-five, and so the testator doubtless deemed it wise to postpone the sale of these lands until the last of those payments became due. He had already directed that all of them be paid out of his estate as a whole. "I dispose of my property and estate as follows." What followed were these bequests. There was no intention to undo what had already been done. Item 7 makes this plain.

"All the rest and residue of my property and estate, of every kind whatsoever, I give, bequeath and devise to all of my children, in equal shares, but subject to the provision

that my real estate is to be kept intact and not disposed of until my youngest child becomes twenty-five years of age, and the division of the said rest and residue of my personal property and estate is not to be made until the same time."

"Rest and residue" could only refer to that from which deductions had been made. If these legacies were not in mind this phrase is meaningless.

In this seventh item the purpose to put these children upon a common footing is again made plain. This rest and residue is to be divided among them in equal shares.

Cases of this character are common. In these the legatees were paid.

*Downman* v. *Rust,* 6 Rand. (27 Va.) 587: Elizabeth Rust gave to Mrs. Olivia Downman $400 and to Miss Sarah Downman $200, and then devised all the rest of her estate, real and personal, in fee simple to her brother. The court held that when he took the *rest* of her estate he took what was left after the payment of legacies. It is true that there never was any personal estate out of which they could have been paid. In support of the conclusions reached many English cases are cited.

*Crouch* v. *Davis,* 23 Gratt. (64 Va.) 62: Here Hector Davis gave to his two nieces $15,000 to be divided between them, and to a slave woman, Anne, $20,000. He gave to a nephew $5,000 and then said: "Whatever balance I may be worth I want given to my sister Anne Crouch and her children." To pay the legacies it was necesary to charge the land. Judge Staples said:

"In the next place, it is insisted that the court erred in holding that the pecuniary legacies constitute a charge upon the real estate. It is universally conceded that as a general rule the personal estate is the natural primary fund for the payment of legacies. Whether they are chargeable on the land, when the personal property proves deficient, is always a question of intention. When the charge is not created in express terms, it may be established by implication. And in seeking for the expressed intention of the testator, his

words are to receive the interpretation which a long series of decisions has attached to them unless it is very certain they were used in a different sense. 1 Redfield on Wills, pages 433-435. Thus it has been held in numerous cases, that where pecuniary legacies alone are first given, and no part of the real estate is specifically devised, and there is a residuary clause, devising and bequeathing the residue of the real and personal estate, this operates to charge the entire property with the legacies. This rule of interpretation is founded upon the idea that the testator, in blending his real and personal estate into a common fund, plainly manifests his purpose to make no distinction between them."

*Wood* v. *Sampson,* 25 Gratt. (66 Va.) 845: The testator Sampson, gave to his wife $20,000. He gave to each of the four children of his son, F. S. Sampson, $10,000, and to each of the two children of his daughter, Janetta Wood, $10,000, after which was this provision:

"All the remaining estate, property and credits, whether real or personal, which I may own at my death, I give, devise and bequeath to my daughter Susan Josephine, the wife of Dr. William T. Walker."

This court, again speaking through Judge Staples, said:

"One of the rules or canons of construction is, that where there is a general gift of legacies, and then the testator gives the rest and residue of his property, real and personal, the legacies are chargeable upon the realty. It is considered that the testator in blending his real and personal estate into a common fund, plainly indicates his purpose to make no distinction between them. * * * In the present case the testator, after various pecuniary legacies to a large amount, gives all his *remaining estate,* property and credits, real and personal, to his daughter, Mrs. Susan J. Walker. The testator in thus using the words 'remaining estate' can only mean what remains after the previous dispositions; and as there is no previous disposition of any part of the realty, the legacies must be looked to to satisfy the terms of the residuary clause."

In *Lewis* v. *Darling,* 16 How. 1, 10, 14 L. Ed. 819, the Supreme Court said:

"Where a testator gives several legacies, and then, without creating an express trust to pay them, makes a general residuary disposition of the whole estate, blending the realty and personalty together in one fund, the real estate will be charged with legacies for in such a case, the 'residue' can only mean what remains after satisfying the previous gifts."

*Rinehart* v. *Rinehart,* 98 W. Va. 93, 126 S. E. 402, 42 A. L. R. 649: The testator in that case said:

"I will, devise and bequeath all the rest and residue of my property, real, personal and mixed, wherever situated, unto my two sisters, Isabel McGuffie and Agnes Rinehart, share and share alike."

The court in its consideration held that, "It suffices to say that the great weight of authority in this country sanctions the rule that, where pecuniary legacies are given generally, and there is a gift of the residue of real and personal estate, the whole being blended in one mass, the legacies are charged upon the entire residue, both realty and personalty." See, also, *Marcy* v. *Graham, supra.*

In these cases legacies are not charged against the land:

*Lee* v. *Lee,* 88 Va. 806, 14 S. E. 534: William Lee gave to his son, Robert, a tract of land. He then gave to his son, William, "the home farm," after which he directed that the residue of his estate, both real and personal, be equally divided among the children. After the will was written the residence on the home farm was burned. By a codicil the testator gave "to my said son William out of any money due and belonging to my estate, the sum of $1,500 for his use to enable him to build on said farm." This legacy was properly held not to be a charge upon the real estate. It was to be paid out of "any money due and belonging to my estate." There were no legacies given prior to the residuary clause and the real estate had been specifically devised.

*Smith* v. *Mason's Ex'r,* 89 Va. 713, 17 S. E. 3, 4. In this

case the court, in declining to charge the real estate with the legacy, said: "The will directs the legacy in question to be paid out of the personal estate, and the said legacy is not only not charged by the will upon the real estate, but the real estate is devised for a different purpose."

*Todd* v. *McFall*, 96 Va. 754, 32 S. E. 472, 473, is strongly relied upon. Catherine McFall was given a legacy of $3,000, "payable from my said estate." The will had theretofore written into it this provision: "I will all of my personal property subject to certain legacies hereinafter specified, to my two nephews." The real estate was specifically devised. There was no residuary clause blending properties.

Judge Riely said: "But the case before us is very different. Here, all the real estate was specifically devised, as was also all the personal property, it is true, bequeathed; but the latter was expressly given subject to the legacies. Here, there was no devise by the testator of the remainder of his estate, real and personal, after the payment of debts and legacies; nor, after general pecuniary legacies, and no specific devise of any portion of the real estate, a residuary clause blending the residue of the real and personal estate into a common fund; no direction that the debts and legacies be first, or previously, paid; nor a devise declared to be made after they are paid."

*Armentrout* v. *Armentrout*, 111 Va. 348, 69 S. E. 333, 334. This case is also relied upon. As we have seen in *Marcy* v. *Graham*, *supra*, Judge Prentis cites it as being against the weight of authority in Virginia.

The testator gave legacies to nieces and nephews and then said: "I devise and bequeath to my wife, Christina J. Armentrout, and Lucy M. Armentrout, wife of R. T. Armentrout, all the residue of my personal estate and real estate; and each of which, to have share and share alike."

It must be conceded that this will upon its face tends strongly to support defendants in error. It must also in fairness be said that taking it upon its face it is difficult to understand how the testator could have spoken of the

residue of his personal and real estate without having in mind that something had theretofore been taken from it. Judge Harrison thought that these considerations were entitled to weight. He said the executor was given no control over the real estate. In the instant case the executors not only have control over the real estate, but they are directed, if necessary, to pay the income from it to the legatees. The court also thought that the fact that the legacies were ordered to be paid with convenient speed indicated that they were to be paid at once and from personalty. Moreover, the facts in that case, which must have influenced the court, plainly tell us that it was correctly decided. Mrs. Armentrout had been a devoted wife for thirty years and had in part paid for the home in which they lived. Lucy Armentrout, nee Ergenbright, was his wife's niece and had lived in the family since she was three years old. "The devoted relation of parent and child had existed between her and her foster father." Of the legatees, two were nephews, one a niece; of the other two one was a grandnephew and one a grandniece of his wife. Each was given $1,000. The home place on which he lived was worth $6,000 or $8,000. The court said: "We are of the opinion that the most reasonable interpretation of the will is that the testator did not intend to charge the real estate devised to his wife and foster child with the payment of the legacies previously given; that he had no thought of turning his wife, who had for more than thirty years shared his joys and sorrows, out of the modest home where they had lived during those years, in order to satisfy legatees who were so little known to him that he had to ask for their names when his will was written," though the court did say that it was not necessary to consider these extraneous circumstances. The intention of the testator was sustained.

In *Carter* v. *Meade, supra,* we have held that there was no reason to believe that real estate specifically devised to children was to be tolled by legacies given to grandchildren, and so the facts differentiate that case from this.

In all of those cases in which realty was relieved it was specifically devised, and in none of them does any intention to charge it appear. It does arise by implication whenever there is a residuary clause where properties are combined and in which the testator undertakes, by the use of the words "rest and residue" or other words of similar import, to dispose of what is left. As was said in the *Marcy Case,* to this intention "all refinements of law as to the abatement of legacies" yield.

Mr. Whitehurst's will contains no specific devise and he does in its residuary clause dispose of "all the rest of my property and estate."

The decree appealed from its reversed and this cause is remanded to the trial court to be there dealt with in accordance with the views here expressed.

*Reversed and remanded.*