# Staunton

LILLIE STEWART, APPELLANT V. SALLIE LANE, ET ALS., APPELLEES.

September 19, 1935.

Present, Campbell, C. J., and Holt, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*S. H. Bond* and *Mack Coleman,* for the appellant.

*Will H. Nickels,* for the appellees.

HOLT, J., delivered the opinion of the court.

On June 13, 1919, Mrs. Elizabeth Q. Peters executed her last will and testament. It reads:

"June 13, 1919. This the last will and testament of Elizabeth Peters. I, Elizabeth Q. Peters, being of sound mind do give will and bequeath to the said Nelson Peters all of my real estate to have and hold so long as he may live or remain my widowed *husben,* but if the said Nelson Peters should marry again he is to lay off my daughter Lillie, thirty-seven and a half acres of land on the lower end of the *farme* out of my part. As to all of my personal property I give and *bequeth* to my *husben* Nelson *Peter* in fee simple.

Given under my hand and seal, this June 13, 1919.

her

ELIZABETH Q. X PETERS (SEAL)

mark                 ."

Was Lillie's estate in said thirty-seven and a half acre tract one in fee simple or was it an estate for the life of Nelson C. Peters only?

In the brief filed on behalf of appellees it is said:

"We submit that the court did not err in holding that the will of Elizabeth Peters only gave to appellant an estate for the life of Nelson C. M. Peters, in the thirty-seven and a half acres of land directed by said will to be laid off to Lillie Stewart in case the said Nelson C. M. Peters should marry again."

On October 18, 1907, J. D. Alley and wife conveyed with general warranty "unto the said Elizabeth Q. Peters and N. C. M. Peters" a tract of 169 acres of land in Scott county.

In 1913, Lillie Peters married Worley Stewart. Mrs. Peters died in 1919. In 1920 Nelson Peters remarried. He died in 1932, leaving to survive him his second wife, Dora Peters, seven children and three grandchildren, children of Mary Elliott, nee Peters, a daughter then dead.

All of these parties except Lillie Peters were plaintiffs

in the original bill. In it complainant prays that timber on this 169 acre tract be sold and that its proceeds and the land itself be partitioned among the heirs of Nelson Peters, and that the devise to Lillie Peters be construed to be a devise to her for the life of Nelson Peters and not a devise in fee simple.

In an amended bill afterwards filed it was claimed that Nelson Peters had no interest in this land, that it was paid for by Mrs. Peters and that such title as he had was one in trust for her.

The trial court was of the opinion that Dora Peters was entitled to a dower in her husband's one-half interest. There was no appeal from its judgment in this particular. It further held that Lillie Stewart, nee Peters, took an estate for the life of her father in this thirty-seven and a half acre lot, and not one in fee simple.

Certain time-worn rules are to be remembered when we come to construe a will. We take it as a whole and if the intention of the testatrix can be gathered from its text, and if that intention is not unlawful, our inquiry is at an end. It stands as written.

"Accompanying facts and circumstances are always admissible in a case of disputed interpretation. 'For the object of interpretation is to ascertain the meaning of the words as used by the testator; what the words represented in his mind; what he understood to be signified by them; and for this purpose it is indispensable that the expositor should know the situation of the testator; the state of his family and property; his relation to persons and things; his opinions and beliefs; his hopes and fears; his habits of thought and of language; in a word, that the interpreter should identify himself with the testator as to knowledge, feeling, and speech, and thus, scanning the words of the will from the testator's point of view, decide as to their meaning as used by him.' Prof. Chas. A. Graves, in 14 Va. Law Reg. 913; *Coffman's Adm'r* v. *Coffman*, 131 Va. (456), 462, 109 S. E. 454." *Jones* v. *Meeks*, 153 Va. 449, 150 S. E. 394, 395.

Professor Graves in that paper read at the annual meeting of the Virginia State Bar Association in 1893, 14 Va. Law Reg. page 913, said:

"There is but one situation in which the judicial expositor has the right to invoke the aid of declarations of intention, and that is where the words in the will describe well, but equally well, two or more persons or two or more things, and such declarations are offered to show which person or which thing was meant by the testator—i.e., by the words in the will as used by him."

What are the facts which help us? Mrs. Peters held an undivided one-half interest in this land. She and her husband lived upon it, as did their daughter, Lillie, and her husband, although in different houses. She gave to her father and mother such service as might have been expected from a dutiful daughter. The mother told her that she should be rewarded, but did not indicate just what that reward would be. At other times Mrs. Peters said that she wished her children to share and share alike in her estate. It is perfectly plain that they would have done this had Mr. Peters not remarried. He would have taken a life estate in her interest while the fee would have passed under the statute of descents and distributions to their children and grandchildren. This equality of treatment was equitable and was what might have been expected. *Whitehurst* v. *White,* 160 Va. 859, 169 S. E. 724.

Stewart and his wife had lived on this place a long time, and matters had moved with smoothness. There had been born to them eight children, six of whom survived. Mrs. Peters had in mind the possibilities of her husband's second marriage, and that the introduction of a stranger into the home might bring some friction. This daughter had spent her life there, and it was in all probability the purpose of the mother to have her remain while the father lived and to protect her against a stepmother who might possibly prove unfriendly. She, therefore, put her as far as possible in the same position she would have had if her father had not remarried. There is no reason to

suppose that she intended to do more than to make her whole in such a contingency, or to give her more than she would have taken had the father not remarried at all. So long as he was unmarried it was her desire that the daughter continue to live as she had theretofore lived, that is to say remain upon the place during his lifetime and share in their common estate upon his death and as near as may be she made these provisions that this situation should continue in the event of his remarriage.

The right of the second wife to take dower in her husband's share does not here seem to have been contested. The power of the wife to set apart any certain lot to the daughter out of her undivided interest might be questioned, but since it was actually done with the father's consent and since that estate is now at an end, this becomes a matter of no moment.

The daughter with her husband did as her mother intended that she should do. She remained upon the home place during the life of her father and upon his death she is sharing equally with other children.

The decree of the trial court is right and it is affirmed.

*Affirmed.*