# Richmond

ROAN P. SIMEONE, ADMINISTRATRIX, ETC. v. OSCAR F. SMITH, III.

January 20, 1964.

Record No. 5685.

Present, All the Justices.

The opinion states the case.

*William L. Parker*, for the plaintiff in error.

*Guilford D. Ware* (*Baird, Crenshaw & Ware*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Henry Bowden, Executor of the last will and testament of Oscar F. Smith, Jr., deceased, filed a motion for judgment against Oscar F. Smith, III, the son of Oscar F. Smith, Jr., seeking to recover $18,813.20. The sum sued for was alleged to be the proportionate amount of Federal estate tax and State inheritance tax assessed against

the executor by reason of the inclusion in the gross estate of the decedent of certain shares of stock which were transferred by the father, during his lifetime, to a trustee in escrow for the son and upon the father's death delivered to the son.

The matter was submitted to the trial court upon a stipulation of facts. The court, in its final order, ruled in favor of the son.

Following the entry of the final order, Henry Bowden died and Roan P. Simeone, Administratrix, d.b.n.c.t.a. was substituted as party plaintiff. The administratrix was granted a writ of error.

The stipulation of facts shows that in 1937, pursuant to a written agreement between Oscar F. Smith, Jr., and Oscar F. Smith, III, the former transferred and delivered to Henry Bowden, Trustee, 15 shares of the corporate stock of Atlantic Contracting Corporation and 160 shares of the corporate stock of Norfolk Dredging Company. The trustee was to hold the stock in escrow pending the son's performance of his agreement to devote, "all of his time, thought, energy and ability" for fifteen years to the interests of the two companies, which the father controlled. The stock was to be delivered to the son upon the completion of his performance, but in the meantime the trustee was authorized and directed to make gifts to the son, at stated intervals, of specified numbers of shares of the stock of the dredging company, the final 15 shares to be delivered at the end of the fifteen-year period.

By November 1946, the trustee had delivered to the son all but 15 shares of the dredging company stock and the 15 shares of the contracting company stock. On November 14 of that year, the father, by letter, revoked the trustee's authority to make any further transfers.

Following negotiations between the father and son, through their respective counsel, a new agreement was reached by the terms of which the remaining stock was delivered to National Bank of Commerce of Norfolk, in escrow. Under the terms of the escrow agreement, the father was to receive all dividends and be entitled to vote the stock during his lifetime, and upon his death the remaining stock was to be delivered to his son.

Oscar F. Smith, Jr., died on January 7, 1958, and, pursuant to the escrow agreement, the stock was delivered to Oscar F. Smith, III.

By his will, Oscar F. Smith, Jr., provided for three small specific legacies and then left the residue of his estate to his daughter, Virginia Smith Eason. Two paragraphs of the will are pertinent to the problem before us. They are:

"*SECOND:* I direct that all of my medical and hospital and funeral expenses be paid in full as prior debts of my estate without limitation and that all of my just debts and obligations including taxes be paid as promptly as practicable; I hereby expressly authorize, empower and direct my executor hereinafter named to sell any of my stock or other personal property not specifically bequeathed, and any of my real estate for the purpose of realizing sufficient cash money to pay the legacies hereinafter made or to pay the costs, commissions and expenses incident to administering this estate, or to pay any city, state or Federal taxes, including estate and inheritance taxes, and to provide funds for preserving any part of the estate and for any other purpose deemed necessary or advisable by my Executor and all such said debts, obligations, costs and expenses are hereby specifically made charges upon and against my real estate and any such sale may be made by my executor either with or without advertisement at public or private sale and upon such terms of cash or credit as he may deem advisable and prudent; and any purchaser of any of my real or personal property is hereby relieved from any obligation to see to the proper application of the purchase price;"

. . . . . . . . . . . .

"*SEVENTH:* Having already given to my son, Oscar F. Smith, III nearly half of my stock in the Norfolk Dredging Company and in the Atlantic Contracting Company and having arranged through an escrow agreement for him to receive, upon my demise, certain additional stock in these companies which would give him the control thereof, all without cost to him, I feel that he has been most generously provided for by me and I therefore make no further gifts or bequests to him or his family;"

The estate of Oscar F. Smith, Jr., was valued, for tax purposes, in excess of $600,000. The executor paid a total of $132,674.31 in Federal estate and State inheritance taxes. The inclusion in the gross estate of the stock, valued at $86,859.60, delivered to the son after the father's death, increased such taxes by the aggregate amount of $18,813.20.

It is the contention of the administratrix that the additional taxes should be borne by the son because of the provisions of the apportionment statutes, Code, §§ 64-150 to 64-155. The son contends that the taxes should fall upon the testamentary estate because such was the intention of the testator as declared by his will. These contentions present the sole question to be decided, that is, whether the

trial court erred in not ordering an apportionment, so that the additional taxes, occasioned by the inclusion in the gross estate of the stock covered by the escrow agreement, would be chargeable to the son.

The apportionment statutes, as related to the question before us, provided for the recovery by the personal representative of a proportionate amount of the Federal estate tax and State inheritance tax from a person receiving property which does not come into the possession of the personal representative but which is required to be included in the gross estate. Code, § 64-155, however, states:

*"Contrary provisions of will or other instrument to govern.—*But it is expressly provided that the foregoing provisions of this article are subject to the following qualification, that none of such provisions shall in any way impair the right or power of any person by will or by written instrument executed inter vivos to make direction for the payment of such estate or inheritance taxes and to designate the fund or funds or property out of which such payment shall be made; and in every such case the provisions of the will or of such written instrument executed inter vivos shall be given effect to the same extent as if this article had not been enacted."

Our inquiry, therefore, must be as to whether Oscar F. Smith, Jr., by his will, made direction for the payment of the taxes here involved and designated the fund or property out of which such payment should be made. Or, to put it another way, does the will disclose an intention by the testator that the burden of such taxes should fall entirely upon the probate estate, contrary to the statutory rule of apportionment?

In answering this inquiry, we apply the ordinary rules of construction relating to wills. The intent of the testator is the cardinal rule, and if it is made clear that Oscar F. Smith, Jr., intended that there should not be an apportionment of taxes, that intent must be given effect.

We are of opinion that the will before us discloses an intention on the part of the testator that the taxes here involved should not be apportioned.

Clear evidence of that intention is found in the second and seventh paragraphs of the will. In the second paragraph, the testator directed that any of his personal estate, not specifically bequeathed, and any of his real estate be sold for the purpose of creating a fund of cash sufficient to pay the small legacies, the costs, commissions and expenses of administration and *any* city, State or Federal taxes, including

estate and inheritance taxes. *All* of such debts, obligations, costs and expenses, moreover, were expressly made charges against his real estate.

By charging his real estate with *any* estate and inheritance taxes and by directing the payment thereof out of the fund created by the sale of his property, the testator fixed the liability for *all* such taxes upon his probate estate. 28 Am. Jur., Inheritance, Estate and Gift Taxes, § 502, p. 361; Annotation, 15 A.L.R. 2d 1216.

And it is highly significant that while the payment of the costs of administration was limited to those, "incident to administering this estate", that is, the estate created by the will, the payment of taxes was not so limited. Had it been the intention of the testator to limit the payment of taxes to those assessed solely upon the probate estate, just as he limited the payment of the costs of administration, he surely would have inserted the phrase, "incident to this estate", or similar words, after the provision for the payment of taxes. His omission of such language regarding taxes, in the face of his specific limitation as to the other expenses, is a clear expression of his intention that all taxes were to be charged to and paid out of the probate estate.

In the seventh paragraph of the will, it was recited that the son had already received nearly half of the stock in the two companies involved and, through the escrow agreement, would receive upon the father's death additional stock which would give the son control of the companies, "all without cost to him." The testator said, in other words, that what the son had already received was, "without cost to him", and what he was to receive upon the father's death was to be, "without cost to him."

It must be presumed that the father knew that the stock would be included in his gross estate for tax purposes. It must also be presumed that he knew that unless he provided otherwise, the estate and inheritance taxes arising by reason of the stock being included in the gross estate would fall upon the son.

The language used in the seventh paragraph of the will, read in the light of and with relation to the wording of the second paragraph, can only be taken to mean that the father intended that the final transfer of the stock upon his death, pursuant to the escrow agreement, would be free of the payment of estate and inheritance taxes by the son.

The administratrix relies on the cases of *Wilmington Trust Co.* v. *Copeland,* 33 Del. Ch. 399, 94 A. 2d 703; *Malden Trust Co.* v. *Bickford,* 329 Mass. 567, 109 N. E. 2d 453, and *In re Durkee's Estate,* 183

Misc. 382, 47 N. Y. S. 2d 721, as authority for her contention that the apportionment statutes should be applied in the case before us.

In the *Copeland* case, the will provided:

"I direct that all the legacies and other beneficial estate *in this will created and provided for* shall be paid free and clear of any estate, inheritance, succession or other taxes which, if chargeable, shall be paid out of the principal of my residuary estate." [Emphasis added].

The Delaware court held this language insufficient to express an intention that beneficiaries of an inter vivos trust should be relieved of the burden of paying their proportionate shares of estate taxes. The court said:

". . . In the case at bar the language of the will respecting the payment of estate taxes embodies the plain intent that the residuary estate shall assume the payment of such estate taxes, and only such estate taxes, as are levied in respect of property passing under the will."

In the *Bickford* case, the testatrix, in her will provided:

"I direct that all taxes of every kind upon the whole or any part of my estate, including inheritance, estate and transfer taxes, both state and federal, shall be paid from the residue of my estate, *it being my desire that the legatees and devisee herein shall receive the full amount of their legacies and devise without the deduction of any tax.*" [Emphasis added].

The Massachusetts court held that the italicized language, "evinces an intent to exonerate from taxes only the gifts passing by the will", and ruled that the beneficiaries receiving non-probate property were liable for their proportionate shares of estate taxes.

In the *Durkee* case, the will provided for the payment, out of the general estate as an expense of administration, of all inheritance and estate taxes, "imposed upon or in relation to any property owned by me at the time of my death." The New York court held that this provision meant that only such taxes were to be paid out of the general estate as were imposed upon the estate created by the will. The court pointed out that the phrase, "any property owned by me at the time of my death", meant property which passed under the will and did not apply to bonds included in an inter vivos trust, which the testatrix no longer considered her property.

The provisions of the wills in the cited cases are clearly distinguishable from the provisions of the will of Oscar F. Smith, Jr., and the decisions do not, therefore, constitute authority leading to a conclusion that there should be an apportionment of taxes in the

case before us. It may be said of the decisions from other jurisdictions on this question that where there is found an intention on the part of a testator that an apportionment of taxes should not take place, that intent is given effect and where evidence of such intent is lacking, apportionment is applied. See Annotation, 15 A.L.R. 2d 1216. That is precisely the rule which we, under our statute in Virginia, must follow. *Baylor* v. *National Bank of Commerce,* 194 Va. 1, 7, 8, 72 S. E. 2d 282.

In his will, Oscar F. Smith, Jr., in conformity with Code, § 64-155, made direction for the payment of all estate and inheritance taxes upon his gross estate and designated the fund or property out of which such payment should be made. He expressed an intention that the payment of such taxes should be made contrary to the statutory rule of apportionment. The order of the trial court gives effect to that intention. The order will be affirmed.

*Affirmed.*