## CIRCUIT COURT OF FAIRFAX COUNTY

In re Estate of
Joseph L. King

November 6, 2003

Case No. (Fiduciary) 66456

BY JUDGE DAVID T. STITT

This matter is before the Court on the Petition for Aid and Direction of the Estate of Joseph L. King's Co-Executors, Patricia Payne and Kathleen King.

The issues raised in the Petition are as follows:

(1) Whether the "just debts" of Joseph L. King are merely his liabilities at death or whether such "just debts" also include the costs of estate administration, as well as estate taxes?

(2) In the absence of a provision in King's will so directing, how should the payment of the estate's debts, taxes, and costs of administration be apportioned among the beneficiaries?

(3) Where a testator apparently created two residuary estates, how should the residuary estate be defined?

### I. *Background*

Joseph L. King died on December 9, 2000. King's Last Will and Testament, dated July 7, 1995, was admitted to probate in the Clerk's Office of the Fairfax County Circuit Court on February 22, 2001. Petitioners Kathleen King and Patricia Payne qualified as Co-Executors of the Decedent's estate on February 22, 2001. On July 11, 2003, King and Payne jointly filed a Petition for Aid and Direction in this Court.

King's will includes the following provisions, with emphasis added:
Under Section I, the Will states:

> My Executor shall be authorized to carry out all provisions and pay my *just debts, obligations, and funeral expenses.* ·

Under Section II, the Will states:

> I direct that *after payment of all my just debts,* my property be bequeathed in the manner following:

Section II continues with the following bequests:

> 1. I leave to my daughter, Kathleen Ann King, the house at 8015 Washington Avenue, Alexandria, Va. [*sic*]. ... I also leave to her any and all automobiles, furniture ... and any monies owed to me from all annuities and/or retirement systems. . . .
> 3. I leave the *rest and residue of my estate,* which consists mainly of the equity in the house at 3440 Mansfield Road, Falls Church, Va., to the friends and relatives listed below. . . .

(Sections II.3.A through E bequeath *fixed monetary sums* to five persons.)

> 3.F. I leave the *rest and residue of my estate to my sisters* to be divided among the six of them. If any shall predecease me, her share shall be divided equally among her surviving children.

Accordingly, the Will designated three groups of beneficiaries:
(1) Kathleen King;
(2) The five recipients of monetary bequests in Sections II.3.A-E; and
(3) The six sisters.
Joseph L. King was survived by the following beneficiaries of his Estate: Jean Price (sister), Nel Hales (sister), Marie Chappaleau (sister), Alice Brassell (sister), Kathleen King (daughter), Joan Story Van Dyke (ex-wife), James Price (brother-in-law), Charles Lewis (nephew), Charles Folds (nephew), Richard Folds (nephew), Robbie Hodge (nephew), Susan Lewis (niece), Marjorie Kaiser (friend). Jane Ann Lewis (sister) and Sybil Hodge (sister) died before King died, and, pursuant to the Will, their shares go to their children equally.

Furthermore, the equity of the Mansfield house,[1] listed in Section II.3, was $215,000. Thus, the beneficiaries stand to receive the following:
(1) Kathleen King: $103,000, including $93,000 from the Decedent's brokerage account;

---

[1] Last year, the Co-Executors sold the Mansfield property to fund the administration expenses and to satisfy outstanding federal and state taxes amounting to $110,000.00. The remaining proceeds from the sale of the Mansfield house are $82,000.

(2) Five monetary bequests:[2] total of $50,000;

(3) Six sisters:[3] total of $165,000.

Finally, the collective debts of the estate are $253,000, as follows:

(1) Taxes: $200,000;

(2) Costs of administration: $40,000;

(3) Debts of the estate: $13,000.

Petitioners ask the Court to determine whether anything outside of the debts of the estate are "just debts" to be paid from the estate. Petitioners also seek for the Court to determine the apportionment of such payment from the beneficiaries' shares.

In order to determine the apportionment of payment, Petitioners also request that the Court determine whether the residuary estate encompasses merely the remainder of equity from the Mansfield house given to the sisters, or if it also includes the five monetary bequests.

## II. *Analysis*

### A. *Definition of "Just Debts"*

The first issue is whether the "just debts" directed to be paid in section I of the Will include estate taxes and costs of estate administration. In Virginia, all debts and liabilities of a testator must be paid before any bequest is valid. *Lynchburg College v. Central Fidelity Bank*, 242 Va. 292, 295, 410 S.E.2d 617, 619 (1991) (citing *Edmunds v. Scott*, 78 Va. 720, 726 (1884)). The costs of administration are charged against the executor in his or her representative capacity, and those costs are paid from the estate. *Bruce v. Farrar*, 156 Va. 542, 551 (1931).

In construing a will, a court must ascertain the intent of the testator from the language of the document, if possible. *Gillespie v. Davis*, 242 Va. 300, 303, 410 S.E.2d 617, 620 (1991). If it is clear that the testator intended there should not be an apportionment of taxes, such intent must be given effect. *Simeone v. Smith*, 204 Va. 860, 863, 134 S.E.2d 281, 283-84 (1964). Testators are presumed not to include estate taxes as "just debts," as taxes are often specifically mentioned in wills as independent of "just debts." *See*

---

[2] Specifically, $10,000 is bequeathed to Joan Story Van Dyke (ex-wife), $10,000 is bequeathed to James Price (brother-in-law), $20,000 is bequeathed to Dr. Marjorie Kaiser (friend), $5,000 is bequeathed to Charles Lewis (nephew), and $5,000 is bequeathed to Susan Lewis (niece).

[3] As two of the sisters are deceased, four sisters are to receive $27,500 each. The children of the deceased sisters are to divide their mothers' share equally.

*Lynchburg College,* 242 Va. at 299, 410 S.E.2d at 621.[4] Because the Decedent has not provided for the payment of taxes, this Court will not include estate taxes as "just debts," defining debts as the decedent's debts plus the costs of administration.

## B. *Apportionment of Estate Taxes*

Petitioners ask the Court to determine the manner in which the payment of taxes should be apportioned. In the absence of any intent to the contrary manifested by the testator, payment of estate taxes is to be apportioned to all beneficiaries under Va. Code § 64.1-161. *Simeone v. Smith,* 204 Va. 860, 866, 134 S.E.2d 281, 285 (1964); *see also Stickley v. Stickley,* 255 Va. 405, 408 (1998). Virginia Code § 64.1-161 is based on the principle that estate taxes should be equitably apportioned among the taxable legatees.

Specifically, Va. Code § 64.1-161 provides that "the amount of taxes so paid, together with any interest and penalty required by the taxing authority to be paid, shall be prorated among persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. Such apportionment shall be made in the proportion that the value of the property, interest, or benefit of each such person bears to the total value of the property, interests, and benefits received by all such persons interested in the estate." Va. Code Ann. § 64.1-161.

## C. *Testator's Intent*

Pursuant to Va. Code § 64.1-165, an individual may avoid apportionment under Va. Code § 64.1-161 by making directions in a will for the payment of such estate taxes and by "designating the fund or funds or property out of which such payment shall be made." Va. Code Ann. § 64.1-165; *Stickley,* 255 Va. at 408. In determining whether Va. Code § 64.1-165 has been invoked, the pertinent inquiry is not whether a particular fund was identified but whether the testator intended that the debts, administration costs, and estate taxes be treated alike. *Stickley,* 255 Va. at 410. The "intent of the testator is the cardinal rule," and must be fulfilled. *Simone v. Smith,* 204 Va. at 863.

This Court finds that no intent was expressed by the Testator to deviate from the apportionment statute, which requires that "estate taxes ... shall be charged against the share of each beneficiary of the estate in the proportion

---

[4] The court noted that the testator, in specifically mentioning taxes and debts in the same list, "made no distinction between debts, administration expenses, and estate taxes." If not making a distinction between debts and taxes was a relevant issue in the *Lynchburg College* case, then they should be classified as distinct items.

that the value of the beneficiary's interest bears to the total value of the estate." *Lynchburg College*, 242 Va. at 296, 410 S.E.2d at 619. Accordingly, the Court finds that the taxes should be apportioned, pro rata, as provided by § 64.1-161.

### D. *Apportionment of Debts; Determining "Residue" and "Property at Large"*

Petitioners also ask the Court to determine how other expenses are to be apportioned. Petitioners cite *Baylor v. National Bank of Commerce of Norfolk*, 194 Va. 1, 72 S.E.2d 282 (1952), for the following hierarchy for the payment of debts:

(1) Personal property at large (first);
(2) Residuary legacy;
(3) Pecuniary legacies;
(4) Specific legacies;
(5) Real estate (last).

It is then important to determine the residuary estate, as it is second in the hierarchy of payment, even if the residuary estate includes real estate. *May v. May*, 210 Va. 584, 587 (1970) (citing *Marcy v. Graham*, 142 Va. 285, 296, 128 S.E. 550, 554 (1925)). In doing so, the Court must then attempt to determine the intent of the testator. *Clark v. Strother*, 238 Va. 533, 539, 385 S.E.2d 578, 581 (1989). Furthermore, "land which is directed to be converted into money is treated as money ... [and], as applied to wills, the object is to ascertain the intention of the testator. . . ." *Marcy*, 142 Va. at 292 (quoting *Moore v. Kernachan*, 133 Va. 206 (1922)).

Bearing the general rules in mind, in the instant case, the Will provides for "payment of just debts, obligations, and funeral expenses, and, after payment of all just debts," then the Will provides for bequests to three groups of beneficiaries:

(1) Kathleen King;
(2) The five recipients of monetary bequests in Sections II.3.A-E; and
(3) The six sisters.

The "rest and residue" of Joseph King's estate consisting mainly of the "equity in the Mansfield Road house" was bequeathed to five named individuals, and the remaining "rest and residue" was devised to his six sisters. The said bequest cannot be said to be a bequest of real property, as the real property was directed by the Will to be converted into money and divided amongst the five named individuals.

Specifically, the Will appears to grant the "residue" of the estate in both Section II.3.A-E *and* Section II.3.F. However, the "residue" granted in Sections II.3.A-E is composed of discrete monetary bequests. Thus, those

bequests can be characterized as a group of specific (or pecuniary) legacies, as they remain static regardless of the size of the "residue" granted in Section II.3.A-E. Accordingly, the residuary estate should be limited to the "residue" given to the Decedent's sisters in Section II.3.F.

Ms. King's bequest should be characterized as personal property at large. It cannot be a specific legacy, because of the broad-sweeping language of the bequest in Section II.1 of the Will.

Thus, the payment of debts should be primarily from Kathleen King's bequest (as personal property at large), and the remainder should be paid from the Decedent's sisters' share (as the residuary legacy). By characterizing the bequests as such, the Court rejects the proposals made by Petitioners in Scenarios A-C, and E, of their Memorandum.

### III. *Conclusion*

"Just debts" are defined as Joseph L. King's debts and costs of estate administration only. Estate taxes should be apportioned pro-rata, pursuant to Va. Code § 64.1-161. Debts should be apportioned primarily from Kathleen King's bequest and then from the sisters' bequests. That result corresponds to Scenario IV-D of Petitioners' Memorandum.